2001-NMCA-010

24 P.3d 771

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**CRYSTAL B., Child–Appellant.**

No. 20,837.

Court of Appeals of New Mexico.

Nov. 30, 2000.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Santa Fe, NM, for Plaintiff–Appellee.

Phyllis H. Subin, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Child–Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} The Child appeals a conditional consent decree. She claims on appeal that the trial court erred in denying her motion to suppress evidence. We requested that the parties brief the appealability of a conditional consent decree under the Children's Code. We determine that, under the facts and circumstances of this case, the consent decree is appealable. We reverse the trial court's determination on the Child's motion to suppress, holding that the seizure by the assistant principal was unreasonable and that evidence obtained after that seizure must be suppressed.

## APPEALABILITY OF CONDITIONAL CONSENT DECREE

{2} It has long been the rule that an appeal will not lie from anything other than a final written order or judgment. "The final judgment rule appears to be incorporated into children's court delinquency proceedings." *In re Larry K.*, 1999–NMCA–078, ¶ 4, 127 N.M. 461, 982 P.2d 1060. Under the Children's Code, a final judgment contemplates a determination that the child committed a delinquent act and that the child is in need of care or rehabilitation. *See* NMSA 1978, § 32A–2–18 (1996); Rule 10–230 NMRA 2000; *see also State v. Doe*, 90 N.M. 249, 561 P.2d 948 (Ct.App.1977). Thus, appeals are permitted from disposition of an adjudicated delinquent child as that is the final act that the trial court must complete to dispose of the case.

{3} A consent decree under the Children's Code allows the delinquency proceeding to be suspended before entry of judgment by placing the Child under supervision for a period of six months. *See* NMSA 1978, § 32A–2–22(A) (1995). The child is placed under supervision for a period of six months. If that supervision is successfully completed, the

charge of delinquency is dismissed. Thus, a consent decree is not the final act that the trial court must complete to dispose of a case.

{4} There is, however, a construction of finality that allows an appeal to alleviate hardship that would accrue where "the consequences of the order that is not the last contemplated order in the case are sufficiently severe." *State v. Durant*, 2000–NMCA–066, ¶ 8, 129 N.M. 345, 7 P.3d 495. Thus, if a party is "sufficiently aggrieved" by the order even though it is not the last order contemplated in the case, an appeal will be allowed.

{5} Here, we believe that the consequences of the consent decree sufficiently aggrieve the Child such that her appeal should be allowed. The court sentenced the Child to six months' probation under strict conditions, including drug testing. Only upon satisfactory completion of those conditions would the charges against her be dismissed. Further, we believe that there might be future consequences attendant upon the consent decree. Even though the charges may be dismissed, the fact of the charges and the consent decree may be considered if other charges arise while she is a child. *See* NMSA 1978, § 32A–2–19 (1996) (giving sentencing court wide discretion in considering all manner of information before making disposition of delinquent child).

{6} Finally, we note that if we were to hold that the consent decree was not appealable, the Child would have no avenue to seek review of the denial of her motion to suppress. *See* N.M. Const. art. VI, § 2 (providing that an aggrieved party has an absolute right to one appeal). We hold that the Child is allowed to appeal the conditional consent decree in this case.

## MOTION TO SUPPRESS

### Standard of Review

{7} We review the trial court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, viewing those facts in the light most favorable to the court's ruling. *See State v. Ingram*, 1998–NMCA–177, ¶ 5, 126 N.M. 426, 970 P.2d 1151. We do not disturb the trial court's findings of historical fact if they are supported by substantial evidence. *See State v. Tywayne H.*, 1997–NMCA–015, ¶ 5, 123 N.M. 42, 933 P.2d 251. The application of the law to those facts is a matter we review de novo. *See id.* Determining whether a seizure and search are reasonable under the law is a legal determination for this Court. *See In Re Josue T.*, 1999–NMCA–115, ¶ 14, 128 N.M. 56, 989 P.2d 431.

### Facts

{8} On the day in question, the Child was walking to school with friends. Before reaching school property and before school started, they stopped to talk with others who were smoking cigarettes. There they were approached by assistant principal Kline who ordered the students into his car. He took them to his office at the school where he searched each one.

{9} Kline testified that before school that day a student informant had approached him and the public safety officer and told them that the Child and two other girls had walked off campus and were smoking in the alley. Based on this information, Kline drove off campus in search of the girls. Kline testified he believed that he had an obligation to go off campus and fetch truants. He also testified he understood the school district had a policy establishing a 1,000–foot "school zone." He testified he went off campus to fetch students about 40 to 50 times a year.

{10} Kline testified that when he found the Child and three other students, he did not observe any of the students smoking. Nevertheless, he ordered them into his car in order to take them to school. It appears he had to repeat the order to Crystal at least twice as she did not want to get in his car. However, because he was already angry, she complied, not wanting to get in further trouble.

{11} Kline drove the students to school. However, rather than letting them go to their classes, he detained them in his outer office while he called each individually into his office to be searched. He explained to each that there was a suspicion that the students were truant and smoking. He then asked each if they had been smoking and if

they were in possession of cigarettes. Next, he conducted a search of their bags and pockets. The Child was the last to be questioned and searched. He did not find any cigarettes on any of the students but did find a small marijuana roach at the bottom of the Child's book bag. The Child denied any knowledge of it.

{12} Kline suspended the Child from school for nine days. She was then turned over to the school safety officer, who field tested the roach and called the Child's mother. The Child made a statement to her mother regarding the roach, which the officer wrote down.

{13} The Child was then charged on a delinquency petition for being in possession of marijuana. She moved to suppress the evidence seized. The trial court determined that Kline had acted reasonably in going off campus to fetch the students, even though they were not truant. The court further determined that the detention and search were reasonable to investigate a report of smoking by these students. Thereafter, the Child entered into a conditional consent decree, explicitly reserving the right to appeal the denial of her suppression motion.

*Discussion*

■ {14} It is well established that school officials do not need a search warrant or even probable cause to search a student's belongings for contraband. *See Josue T.,* 1999–NMCA–115, ¶ 15, 128 N.M. 56, 989 P.2d 431. The warrant requirement "would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." *New Jersey v. T.L.O.,* 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). Further, strict adherence to a probable cause requirement could not be justified in light of "the substantial need of teachers and administrators for freedom to maintain order in the schools." *Id.* at 341, 105 S.Ct. 733. Thus, the legality of a search of a student depends on the reasonableness, under all the circumstances, of the search. *See id.* This lower standard applies, however, only in furtherance of the school's education-related goals; that is in a situation where the student is on school property or while the

student is under control of the school. *See Josue T.,* 1999 NMCA 115, ¶ 18, 128 N.M. 56, 989 P.2d 431.

{15} Here, the evidence is uncontested that the assistant principal left school grounds outside school hours to seize the Child and the other students. Thus, the State was required to show what authority Kline had to seize students who were not on school property before school started. ·

{16} Kline testified that he understood that the school district had a policy of a 1,000-foot "school zone," which gave him absolute authority to enforce school rules within that zone. No policy or handbook containing such policy was made a part of the record. In further testimony, Kline admitted that the handbook "does not specifically authorize you to go off campus and get students." He simply stated that it was normal operating procedure to do so. Kline testified that he believed he had such authority even before the school day started if he thought a school rule was being violated.

■ {17} We do not believe this is sufficient to establish Kline's authority to seize students off campus. We recognize that school teachers and administrators are granted authority to enforce school rules governing students on property belonging to the public school and while students are under control of the public school. *See* NMSA 1978, § 22–10–5(D) (1975). The evidence here, however, does not establish that the students were on school property. In fact, the trial court found that they had not yet been on campus, but were simply on their way to school. Further, there was no evidence that the students were under the control of the school.

{18} The trial court determined that the students' location was irrelevant to its analysis. Instead, it ruled that what was determinative was what information Kline had at the time he took the action. While we agree that the determination of whether Kline's actions were reasonable depends on what he knew at the time, we believe that the fact that the students were off campus before the school day started is relevant to whether Kline acted reasonably.

{19} While there may be circumstances where school officials may pursue, detain, and search students off campus and outside school hours, the State must present evidence to establish that the officials were acting within their statutory authority. Such evidence was not presented here.

{20} The only evidence of authority presented was Kline's belief that he could enforce school rules within 1,000–feet ("or so") of the school. No regulation or school policy was presented showing that a "school zone" exists in which school officials have authority. Further, nothing was presented to establish what time of day the school had control over the students. The articulated concerns about attacks by high school students in the particular alley where the Child was found was not sufficient to establish that Kline's actions were school authorized.[1]

■■■ {21} Even if we were to assume that Kline had authority to go off campus to investigate a violation of school rules based on a tip that the students had been on campus and had left to go smoke, we do not believe that his subsequent seizure and search of the students were reasonable. Kline was informed by another student that the Child and a friend had left the school to go smoke in the alley. While we have some concern with relying on such information, we believe that our cases permit Kline to investigate upon such information. *See State v. Michael G.,* 106 N.M. 644, 647, 748 P.2d 17, 20 (Ct.App.1987).

■■■ {22} Kline found the students in the alley. However, there was no evidence that they were smoking. Neither did he see any cigarettes or smell any smoke. Nor did he see anyone trying to hide something. At that point, there was no evidence of any violation of school rules or law. Any suspicions that he had from the tip were dispelled and he was required to let the students go. *See City of Albuquerque v. Haywood,* 1998–NMCA–029, ¶ 15, 124 N.M. 661, 954 P.2d 93 (stating that if the initial suspicion and rationale for the stop has been dispelled, the suspect is free to leave). Kline's actions here

in ordering the students into his car to take them to school was a seizure not reasonably supported by the circumstances of this case. The fact that the students complied with his order does not save the seizure from illegality. *See Ingram,* 1998–NMCA–177, ¶ 8, 126 N.M. 426, 970 P.2d 1151 (holding that compliance with directive of an official is not consent).

■■■ {23} The State argues that the seizure in the alley did not result in statements or evidence that could be suppressed since none of the students was searched or said anything in the alley. It argues that Kline was simply making sure that the students got to school, "hastening their inevitable arrival at school by a matter of minutes." The State's argument ignores reality. The students were seized in the alley, forced to accept a ride to school, and were never free to leave Kline's presence until after he questioned and searched them in his office. Thus, the seizure in the alley began the entire process that resulted in the finding of the contraband.

{24} The State goes on to argue that the fact the initial encounter occurred away from the school campus does not invalidate the subsequent on campus search. It contends that because Kline could have detained and searched the students on campus based on the tip that he received, any illegality in detaining them in the alley can be ignored. We will not speculate on legal ways that the search could have been conducted. The illegality of the detention in the alley taints the subsequent search in Kline's office.

{25} We hold that the seizure in the alley violated the students' Fourth Amendment right to be free from unreasonable search and seizure. The evidence obtained during the search was tainted by this unreasonable seizure and must be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In light of our reversal of the denial of the motion to suppress, we do not address the merits of the Child's double jeopardy issue.

1. We do not here intend to imply that school rules authorizing off-school-property search or seizure are somehow automatically insulated from Fourth Amendment scrutiny.

{26} The trial court's decision on the motion to suppress is reversed and the matter remanded for action consistent with this opinion.

{27} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Judge, RODERICK T. KENNEDY, Judge.