2006-NMCA-072

137 P.3d 1198

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**PABLO R., Child–Appellee.**

**No. 25,179.**

Court of Appeals of New Mexico.

April 28, 2006.

Certiorari Denied, No. 29,798, June 12, 2006.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellant.

John Bigelow, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

VIGIL, Judge.

{1} The State appeals the district court's order granting Child's motion to suppress

evidence. Child and his jacket were searched by two campus service aides in the school security office because he was walking down a school hallway without a pass after classes had begun and he appeared nervous and fidgety when he was initially confronted. Following an evidentiary hearing, the district court ruled that the search was not supported by reasonable suspicion. We affirm.

## BACKGROUND

{2} At the relevant time, Child was a junior at Rio Grande High School. On December 15, 2003, at approximately 12:35 p.m., Child was walking down the school hallway during class time and Elvis Delaney, a campus service aide, stopped him. Campus service aides are employed by Albuquerque Public Schools to assist school officials in security matters, including patrolling the campus and ensuring that students are in class. Rio Grande High School has a history of problems on campus, including fighting, truancy, graffiti, gang activity, and weapons. When a campus service aide finds a student who is not in class, he first determines whether the student has a pass authorizing him or her to be out of class. If the student has a pass, the campus service aide makes sure the student is headed to the authorized destination. If the student has no pass, he determines why the student is out of class and escorts the student to the school security office to determine whether any disciplinary action is required.

{3} Delaney testified that he had three or four prior contacts with Child, and on those occasions, Child was also either late to class or out of class. On those occasions, he simply instructed Child to get to class. However, on this occasion, for the first time, Child was acting "a little nervous" and fidgety so he directed Child to the security office because he thought "something was wrong" and he had become concerned that Child might have a weapon or marijuana on him. Delaney admitted he did not suspect Child of any criminal activity, did not smell marijuana on him, and had no information concerning any other wrongdoing by Child that day. Furthermore, Delaney's written incident report makes no mention of Child's nervousness, and it only states that Child "was caught wandering campus" and brought to the security office for a pat-down.

{4} Delaney could not recall whether Child offered any explanation about where he was going. Delaney also did not initially recall whether he asked Child any questions before directing him to the security office; however, he subsequently testified that he did ask Child whether he had a pass, and Child did not have a pass or agenda. Delaney explained that, while on campus, students are typically required to carry with them an agenda containing any signed passes authorizing them to be out of class. However, he also acknowledged that sometimes a student may legitimately be out of class without a pass, such as when a teacher instructs the student to obtain a pass from the administration office.

{5} Child testified that after the lunch period, he walked his girlfriend to her class and then went to his class, but was not allowed into the classroom by his teacher because he was late. His teacher instructed him to go to the administration office to obtain a late pass. On his way to the administration office, Child walked by the security office and he was stopped by Delaney who ordered him inside. Before the search, Delaney had asked Child where he was going and Child testified he responded he was going to the administration office to get a pass. When asked whether he was nervous when confronted by Delaney, Child responded that he was not given the chance to be nervous.

{6} In the security office, Delaney instructed Child to take his jacket off, place it on a table, empty his pockets, and stand against the wall, with his hands and legs spread apart, and Child complied. While patting down Child, Delaney found a pipe containing what appeared to be marijuana residue, a black magic marker, and a lighter with the initials "BST" etched on it. "BST" stands for "Bud Smoking Thugs," a known group on campus. Another campus service aide, Vincent Gallegos, assisted in the search because of the policy to have two campus service aides conduct searches: one to search the student's person and the other to search his or her belongings. Thus, while Delaney patted down Child, Gallegos searched the

jacket, finding brass knuckles inside it. On cross-examination, Gallegos acknowledged he had no independent reason for searching Child. Further, he was not concerned about his safety and had no history of trouble with Child.

{7} The district court judge questioned both Delaney and Gallegos about their reasons for searching Child. In response to the judge's questions, Delaney said he initially stopped Child because he was not in class and he did not have a pass authorizing him to be out of class, and that he searched Child because he appeared nervous and was fidgeting. When asked if the school had a policy of searching any student who was out of class without a pass, Delaney said there was no such policy, but that a student could be searched if he or she appeared to be "hiding something." Gallegos, on the other hand, claimed that any student who is caught out of class without a pass is subject to a search for weapons or contraband. He said that students who are out of class without permission are usually doing something they should not be doing. He also said that being out of class without a pass is a violation of the school rules, and the school handbook, which is distributed to every student, authorizes a search when a student violates school rules.

{8} The district court judge asked for a copy of the school handbook, directed the parties to submit briefs in support of their respective positions, and took the matter under advisement. The district court subsequently granted Child's motion to suppress. Although the court did not enter findings of fact in the written order granting the motion, it gave the following oral ruling in open court. First of all, the school handbook provided no basis for searching Child. Furthermore, the district court found, Child was in the hallway without a pass because he was late returning from lunch and he had been directed by his teacher to obtain a pass from the administration office. Thus, the court concluded, there was no reasonable suspicion that Child had violated the law or a school rule, and the search of Child was unlawful. The State appeals.

## STANDARD OF REVIEW

{9} A motion to suppress evidence raises issues of fact and issues of law. On appeal, we therefore review a ruling on a motion to suppress under a two-part standard: first, we determine whether the findings of fact made by the district court are supported by substantial evidence; second, we engage in a de novo review of the application of the law to those facts. *State v. Vandenberg,* 2003–NMSC–030, ¶ 17, 134 N.M. 566, 81 P.3d 19. We view the facts as determined by the district court in the light most favorable to its ruling, *In re Josue T.,* 1999–NMCA–115, ¶ 14, 128 N.M. 56, 989 P.2d 431, we indulge all reasonable inferences in support of the district court's ruling, and we disregard all evidence and inferences to the contrary. *State v. Jason L.,* 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856. "Determining the reasonableness of a search, however, is a matter of law." *In re Josue T.,* 1999–NMCA–115, ¶ 14, 128 N.M. 56, 989 P.2d 431. We therefore apply a de novo review to the district court's determination that the search in this case was unreasonable. *Id.*

## APPLICABLE LAW

{10} "It is well established that school officials do not need a search warrant or even probable cause to search a student's belongings for contraband." *State v. Crystal B.,* 2001–NMCA–010, ¶ 14, 130 N.M. 336, 24 P.3d 771. Because school officials have a need to maintain order and discipline on school grounds, searches conducted by school officials in the school setting are subject to a less stringent standard. *Id.* However, students "do not shed their constitutional rights at the schoolhouse gate" and they maintain a legitimate expectation of privacy in their persons and in the personal belongings they bring to school. *State v. Tywayne H.,* 1997–NMCA–015, ¶ 7, 123 N.M. 42, 933 P.2d 251. Therefore, while probable cause is not required, the search of a student must still be reasonable under the circumstances in order to withstand constitutional scrutiny. *Crystal B.,* 2001–NMCA–010, ¶ 14, 130 N.M. 336, 24 P.3d 771.

{11} In *New Jersey v. T.L.O.,* 469 U.S. 325, 341–43, 105 S.Ct. 733, 83 L.Ed.2d

720 (1985), the United States Supreme Court formulated a two-prong test to determine whether the search of a student conducted by public school officials is reasonable. We adhere to this formulation. *State v. Michael G.*, 106 N.M. 644, 646, 748 P.2d 17, 19 (Ct. App.1987); *In re Josue T.*, 1999–NMCA–115, ¶¶ 15–21, 128 N.M. 56, 989 P.2d 431. First, the court must determine whether the search was justified at its inception. *T.L.O.*, 469 U.S. at 341, 105 S.Ct. 733. A search of a student by a school official is justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated, or is violating, either the law or the rules of the school. *Id.* at 341–42, 105 S.Ct. 733. Second, the court must determine whether the search, as conducted, was reasonably related in scope to the circumstances which justified the search in the first place. *Id.* at 341, 105 S.Ct. 733. A search is permissible in its scope when the measures adopted and used are reasonably related to the objectives of the search and are not excessively intrusive in light of the age and sex of the student and the nature of the alleged infraction. *Id.* at 342, 105 S.Ct. 733.

## ANALYSIS

{12} A school official must have reasonable grounds to suspect that a student has violated the law or a school rule and that a search will uncover evidence of that violation in order for the search to be constitutionally justified at its inception. *T.L.O.*, 469 U.S. at 341–42, 105 S.Ct. 733; *Tywayne H.*, 1997–NMCA–015, ¶ 8, 123 N.M. 42, 933 P.2d 251. Thus, there must be a nexus or a connection between the item searched for and the suspected violation. *T.L.O.*, 469 U.S. at 345, 105 S.Ct. 733. "A correlation between the wrongful behavior of the student and the intended findings of the search is essential for a valid search of the student under the Fourth Amendment." *In re Lisa G.*, 125 Cal.App.4th 801, 23 Cal.Rptr.3d 163, 166 (2005). The essential nexus between Child's infraction and the object of the search is missing in this case.

{13} The California Supreme Court discussed the significance of a connection between the search and the proscribed activity of a child in the case of *In re William G.*, 40 Cal.3d 550, 221 Cal.Rptr. 118, 709 P.2d 1287 (1985) (in bank). There, an assistant principal encountered three students who were late for class. *Id.* 221 Cal.Rptr. 118, 709 P.2d at 1289. When he asked the students where they were heading and why they were late for class, one student, William, made furtive gestures in attempting to hide his calculator case, which had an odd-looking bulge. *Id.* When asked what he had in his hand, William replied, "Nothing." *Id.* He also said "You can't search me," and then, "You need a warrant for this." *Id.* After several unsuccessful efforts to convince William to hand over the case, the assistant principal forcefully took the case and unzipped it, finding evidence of marijuana use and dealing. *Id.* The court concluded that the search was not supported by reasonable suspicion because the assistant principal "articulated no facts to support a reasonable suspicion that William was engaged in a proscribed activity justifying a search." *Id.* 221 Cal.Rptr. 118, 709 P.2d at 1297. The court also noted that the record did not reflect any prior knowledge or information on the part of the assistant principal linking William to the possession, use, or sale of illegal drugs or other contraband. *Id.* Thus, the court concluded, the assistant principal's "suspicion that William was tardy or truant from class provided no reasonable basis for conducting a search of any kind." *Id.*

{14} We find the California court's reasoning in *William G.* pertinent and persuasive. In this case, Child was suspected of a similar type of violation: being out of class without a pass. Delaney admitted he did not suspect Child of engaging in any criminal activity, did not smell marijuana on him, and had no knowledge or information concerning any wrongdoing by Child, other than being out of class without a pass. Gallegos admitted he had no independent reason for searching Child and had no history of trouble with Child. Nonetheless, Child and his belongings were searched for contraband. Because there is no logical connection between the search of Child for contraband and the suspected violation of being out of class without a pass, we conclude that the search in this

case was not justified at its inception. When the only infraction under investigation is being out of class without a pass or late to class (which may be violations of school rules), we conclude that a search of the student's person and belongings is not justified because the search would not likely reveal evidence of the suspected violation. *See also In re Lisa G.*, 23 Cal.Rptr.3d at 166 (determining that student's disruptive behavior in class did not authorize search of student's personal belongings); *State v. B.A.S.*, 103 Wash.App. 549, 13 P.3d 244, 246 (2000) (concluding that search was unjustified where "there was no evidence in the record of a correlation between a student's violation of the closed campus policy and a likelihood he or she is bringing contraband onto campus").

{15} The State argues that *William G.* is distinguishable. Relying on Delaney's testimony that Child was nervous and fidgety, the State argues that the search was justified for safety reasons. However, nervousness alone is not sufficient to justify even a protective frisk for safety reasons. *Vandenberg*, 2003–NMSC–030, ¶ 31, 134 N.M. 566, 81 P.3d 19. Rather, reasonable suspicion to justify a protective frisk depends upon whether the officer is able to articulate specific reasons *why* the nervousness caused the officer to believe his safety was compromised. *Id.* In this case, Delaney did not articulate any specific reasons why he believed Child's nervous demeanor caused him to believe his safety would be compromised, and Gallegos admitted that he was not concerned about his personal safety. Insufficient justification was presented for a protective frisk, let alone the full search that was performed upon Child. The State urges us to rely on several out-of-state authorities which it claims authorize a search when a student is out of class without a pass and the student's conduct raises safety concerns. However, those cases do not apply because the element of officer safety concern is absent.

{16} Delaney testified that because Child appeared nervous and fidgety, he thought "something was wrong" and became concerned that Child "might have a weapon or anything else like marijuana" on him.

However, this was nothing more that a hunch and insufficient as a matter of law to provide reasonable suspicion to conduct the search. *See In re Josue T.*, 1999–NMCA–115, ¶ 23, 128 N.M. 56, 989 P.2d 431 ("A suspicion based on an inchoate and unparticularized suspicion or hunch would not be reasonable." (internal quotation marks and citation omitted)). "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996–NMCA–059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. At the suppression hearing, the State did not elicit any specific articulable facts to support a reasonable suspicion that Child was carrying a weapon or marijuana or engaging in any prohibited activity to justify a search. Moreover, reasonable suspicion must exist at the inception of the search; the State cannot rely on facts which arise as a result of the search, such as the discovery of the weapon and drug paraphernalia on Child. *Jason L.*, 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856. Because the campus service aides had no idea what Child might have had in his possession upon searching him, or why the search might have revealed evidence of a violation of the law or school rules, we conclude that they did not have a reasonable suspicion to justify the search of Child at its inception. *See R.S.M. v. State*, 911 So.2d 283, 284–85 (Fla.Dist.Ct.App.2005).

{17} It is also possible the district court simply rejected Delaney's testimony that Child was acting "nervous" and "fidgety" when stopped. As discussed above, the district court did not enter any findings of fact in its order, and its oral ruling did not include any finding concerning whether Child was nervous during the stop. Our review of the record indicates that there was inconsistent evidence adduced on the issue of Child's nervousness. While Delaney testified that Child was nervous and fidgety when confronted, Child testified that he "was not given a chance to be nervous." Moreover, Delaney admitted on cross-examination that his written report omitted any mention of Child's nervous and fidgety demeanor, even though he normally tries to be as accurate and complete as possible in preparing his reports.

When the evidence is conflicting, we consider the evidence that supports the district court's ruling, and we will draw all inferences and indulge all presumptions in favor of the district court's ruling. *Jason L.*, 2000–NMSC–018, ¶ 11, 129 N.M. 119, 2 P.3d 856. Thus, in this case, we may presume that the district court believed Child's testimony that he was not nervous.

## CONCLUSION

{18} For the foregoing reasons, we conclude that the search of Child was unreasonable and therefore affirm the order granting Child's motion to suppress evidence.

{19} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and IRA ROBINSON, Judges.