This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 27,552**

**JONATHON D.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Jonathon D. (Child) appeals from the district court's ruling denying a motion to suppress evidence obtained as a result of a search at Farmington High School. Finding no error, we affirm.

**BACKGROUND**

At approximately 8:00 a.m. on October 12, 2006, a teacher observed Child smoking a cigarette outside one of the school buildings at Farmington High School. Smoking cigarettes on school grounds is a violation of school policy at the high school. Accordingly, the teacher reported the incident to vice principal Christopher Pash.

When a student has been caught smoking at Farmington High School, the policy, pursuant to the student handbook, is to search that student to determine if they are in possession of any additional contraband. The student handbook states that a search is permitted if there is reasonable cause to believe that the student has violated a school rule or the law. The search generally consists of asking the student to remove his or her coat or jacket, empty out his or her pockets, and then pull the pockets of their clothing inside out. In addition, the student's back pockets are checked with a ruler or pen. Finally, the student is asked to take off his or her shoes and lift up his or her pants to ascertain whether contraband is hidden in the student's socks.

At the hearing on the suppression motion, Mr. Pash testified that he brought Child to the office, asked Child why he had been smoking and if Child "had anything else" in his possession. Mr. Pash did not remember whether Child handed over any cigarettes before he began the search, and he did not recall finding cigarettes in Child's possession. After he talked to Child, Mr. Pash proceeded to conduct a search of Child—in accordance with school policy—to determine if Child was in possession of cigarettes or other contraband. Child was not wearing a jacket or coat so Mr. Pash began the search by asking Child to remove his shoes and instructed Child to pull up his pant legs. When Child raised his pant legs, Mr. Pash noticed a bulge in Child's sock. He asked if Child suffered from a medical condition which might account for the bulge. Child answered, "No. You found my stash." Child's "stash" was marijuana.

Child offered a slightly different account of the events which occurred after he was taken to the office. According to Child, he immediately and voluntarily relinquished a pack of cigarettes and a lighter as soon as he entered the office. Thereafter, Mr. Pash began drafting a three-day suspension notice. Once that suspension notice was written, Mr. Pash left the office for three or four minutes. After he returned to the office, Mr. Pash asked Child to remove his shoes and lift his pant legs. When Mr. Pash discovered the marijuana in Child's sock, he threw out the three-day suspension notice and drafted a ten-day suspension notice.

In the district court, Child moved to suppress the evidence (the marijuana) obtained as a result of the search. Child argued that Mr. Pash had searched him twice. As a result of the first search, Mr. Pash discovered the cigarettes and lighter, and as a result of the second search, he discovered the marijuana. Based on these facts, Child claimed that the second search was not justified because any suspicion that may have arisen as a result of the smoking violation was "quelled" after Mr. Pash seized the cigarettes and lighter. The district court denied Child's motion. It noted first that "to hold that the voluntary production of some contraband by . . . [C]hild vitiates, rather than strengthens, an existing reasonable suspicion turns logic on its head." The district court went on to state that "[t]he lack of memory of [Mr. Pash] is problematic, but once the [C]hild produced the cigarettes and lighter it would certainly be appropriate to follow up with a search for additional contraband."

On appeal, Child argues that the district court erred in denying his motion to suppress because Mr. Pash did not have reasonable suspicion to search him a second time after he had already turned over the cigarettes. Child does not contend here that Mr. Pash searched him on two separate occasions. Rather, Child asserts that once he voluntarily relinquished the cigarettes and lighter there was no longer any reasonable suspicion to conduct a search. Accordingly, Child argues that the search by Mr. Pash violated Child's rights under the Fourth Amendment to the United States Constitution. For the reasons that follow, we disagree.

4

**DISCUSSION**

Because a motion to suppress evidence raises issues of fact and issues of law, we apply a two-part standard of review: "first, we determine whether the findings of fact made by the district court are supported by substantial evidence; second, we engage in a de novo review of the application of the law to those facts." *State v. Pablo R.*, 2006-NMCA-072, ¶ 9, 139 N.M. 744, 137 P.3d 1198. We view the facts as determined by the district court in the light most favorable to its ruling. *In re Josue T.*, 1999-NMCA-115, ¶ 14, 128 N.M. 56, 989 P.2d 431. "Determining the reasonableness of a search, however, is a matter of law." *Id.* We therefore apply a de novo review to the district court's determination that the search of Child in this case was reasonable. *Id.*

As we have noted, our standard of review requires that we first assess whether the district court's findings of fact are supported by substantial evidence. The parties do not dispute the majority of the factual underpinnings in this case. The one fact which remains uncertain is whether and when Child turned over the cigarettes and lighter to Mr. Pash. Child testified that he turned over the cigarettes and lighter immediately upon entering the office. Mr. Pash, on the other hand, testified that he did not remember whether Child handed over any cigarettes before he began the search, that he did not recall finding cigarettes in Child's possession although he did find cigarettes at some point, and that Child may have voluntarily turned them over.

The district court was not troubled by Mr. Pash's inconclusive testimony and observed that "[t]he lack of memory of [Mr. Pash] is problematic, but once . . . [C]hild produced the cigarettes and lighter it would certainly be appropriate to follow up with a search for additional contraband." Thus, it appears that the district court accepted Child's account of the search to the extent that Child testified that he voluntarily relinquished cigarettes and a lighter to Mr. Pash before Mr. Pash initiated the search which ultimately revealed the marijuana. To the extent that there is a dispute as to whether Child turned over the cigarettes and lighter, there is substantial evidence to support the district court's finding that he did do so. In so concluding, however, we note that whether or not Child turned over the cigarettes and lighter is of little consequence because there is no disagreement that Child had been caught smoking in violation of school policy.

We thus turn to the second prong of our analysis, whether it was reasonable under the Fourth Amendment to the United States Constitution for Mr. Pash to conduct a further search of Child to determine whether he had additional contraband on his person. The parties do not dispute the basic principles governing a search of a student by a school official. "It is well established that school officials do not need a search warrant or even probable cause to search a student's belongings for contraband." *State v. Crystal B.*, 2001-NMCA-010, ¶ 14, 130 N.M. 336, 24 P.3d 771. Because school officials have a need to maintain order and discipline on school

6

grounds, searches conducted by school officials in the school setting are subject to a less stringent standard. *Id.* However, students "do not shed their constitutional rights at the schoolhouse gate," and they maintain a legitimate expectation of privacy in their persons and in the personal belongings they bring to school. *State v. Tywayne H.*, 1997-NMCA-015, ¶ 7, 123 N.M. 42, 933 P.2d 251. Therefore, while probable cause is not required, a school search of a student is legal if it is "reasonable under the circumstances." *Pablo R.*, 2006-NMCA-072, ¶ 10.

The parties also agree that when evaluating whether a school search was reasonable under the circumstances, our courts apply the two-prong standard set forth in *New Jersey v. T.L.O.*, 469 U.S. 325, 341-42 (1985), which was recently reiterated in *Safford Unified Sch. Dist. No. 1 v. Redding*, 129 S.Ct. 2633, 2638-39 (2009). *See Kennedy v. Dexter Consol. Sch.*, 2000-NMSC-025, ¶¶ 16-19, 129 N.M. 436, 10 P.3d 115. Under the first prong of the standard articulated in *T.L.O.*, we determine whether the search was justified at its inception. 469 U.S. at 341. A search is justified at its inception if "there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 341-42. Under the second prong, we determine whether the search, as conducted, "was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 341 (internal quotation marks and citation omitted). It is reasonable in scope if "the measures adopted are reasonably related to

7

the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342.

Child contends that the search he was subjected to does not satisfy either prong of the standard articulated in *T.L.O.* Child argues that once the cigarettes and lighter were in Mr. Pash's possession, there was no longer reasonable suspicion to justify the search. Thus, there was no justification for the search at its inception. Further, Child argues that Mr. Pash's examination of his socks lacked any connection to the reasonable suspicion which initially existed because no such reasonable suspicion *ever* initially existed. We address these arguments in turn.

The case relied upon by Child, *Crystal B.*, does not support his position that the search was not justified at its inception. In *Crystal B.*, 2001-NMCA-010, ¶ 25, we held that a school official violated a student's Fourth Amendment rights when the school official, after receiving a tip that the student was smoking in an alley off campus, seized the student, ordered her into his car, and took her back to the school. *Id.* ¶¶ 9-10. After the school official and the student returned to campus, the school official searched the student and found a small amount of marijuana in her book bag. *Id.* ¶ 11. This Court first looked to the reasonableness of the school official's actions, and we held that even assuming the school official had the authority to leave school property to investigate a violation of school rules, the seizure of the student was unreasonable. *Id.* ¶¶ 21-22. The rationale underlying our conclusion that the seizure

8

was unreasonable was two-fold. *Id.* ¶¶ 12-24. First, the school official had no authority to seize the student at a location off the grounds of the school. *Id.* ¶¶ 15-20. Second, when the student was found in the alley, the school official did not see the student smoking, did not smell any smoke, and did not see anyone trying to hide anything. *Id.* ¶ 22. Thus, any suspicion gleaned from the tip was dispelled, and the school official had no justification for the seizure as there was no evidence the student was violating school policy or the law. *Id.* Accordingly, the seizure and subsequent search were both unreasonable, and the evidence seized should have been suppressed. *Id.*

Child contends that his case is analogous to *Crystal B.* because once he relinquished the cigarettes and lighter to Mr. Pash, the reasonable suspicion which existed dissipated and Mr. Pash was required to release him. We are not persuaded. Child's case is significantly different from *Crystal B.*, a case where no violation of school policy or the law was observed, and therefore, there was no reasonable suspicion for the seizure. Rather, the initial justification for the search at issue here arose because a teacher reported that Child had been observed smoking on school grounds. There is no dispute that Child had in fact been caught smoking. Mr. Pash took Child to an office, asked Child why he had been smoking, and asked if he had anything else in his possession. Mr. Pash then conducted the search based on the suspicion that Child possessed tobacco products in violation of school rules. The

9

circumstances of the encounter between Mr. Pash and Child established that Mr. Pash had a reasonable suspicion that Child may have been in possession of additional contraband. Accordingly, the search was justified at its inception. The fact that Mr. Pash discovered marijuana, not cigarettes or cigarette smoking paraphernalia, does nothing to alter this conclusion.

Further, we agree with the district court that the reasonable suspicion which existed to initiate the search of Child for evidence of cigarette use was strengthened, not diminished, when Child relinquished evidence of that violation (cigarettes and a lighter) to Mr. Pash. That Mr. Pash would suspect that Child might have additional cigarettes and other related contraband beyond that which was already voluntarily relinquished was neither an unreasonable assumption nor an unreasonable basis upon which Mr. Pash could have concluded that searching Child was warranted. Rather, this seems precisely the type of "common-sense conclusio[n] about human behavior upon which practical people—including government officials—are entitled to rely." *T.L.O*, 469 U.S. at 346 (internal quotation marks and citation omitted). We have little difficulty concluding that the search of Child was justified at its inception and hold that the search satisfies the first prong of the standard articulated in *T.L.O.*

Child's arguments that the search Mr. Pash carried out failed to satisfy the second prong of the *T.L.O.* standard are equally unpersuasive as they are, effectively, identical to Child's arguments regarding why the search failed the first prong. Child

10

contends that having turned over his cigarettes and lighter, Mr. Pash did not possess reasonable suspicion to initiate the search, and thus, Mr. Pash's examination of Child's sock had no connection to the initial reason for the search as no such reason existed. We reject this argument for the reasons we rejected Child's previous arguments.

Furthermore, the facts and circumstances demonstrate that the scope of the search was reasonably related to Mr. Pash's objective of determining whether Child possessed tobacco products and was not excessively intrusive in light of the age and sex of Child. *T.L.O.*, 469 U.S. at 342. Requiring Child to remove his shoes and raise his pant legs was minimally intrusive at best. The evidence establishing the manner and limited scope of the search supports Mr. Pash and Child's testimony to this effect. Thus, the search of Child's socks that resulted in the seizure of the marijuana did not violate the Fourth Amendment's reasonableness requirement for a search of a student at school.

Child argues that, once the cigarettes and lighter had been turned over, Mr. Pash's "suspicions he had from the tip the teacher gave him had been dispelled, and he was required to let [Child] go." This argument is without merit. The record demonstrates that Mr. Pash had a reasonable suspicion that Child was in possession of tobacco products, and his search of Child proceeded under that suspicion. The surrender of the cigarettes and lighter did not cause Mr. Pash's suspicion to dissipate

11

but instead provided additional justification to search elsewhere based on the reasonable suspicion that Child was in possession of additional tobacco products. Child's argument is precisely the type of overly narrow conceptualization of the term "reasonableness" the United States Supreme Court rejected in *T.L.O. See T.L.O.*, 469 U.S. at 343-346 (rejecting the New Jersey Supreme Court's "crabbed notion of reasonableness" upon which the New Jersey court struck down the search of a student's purse and instructing that "reasonable suspicion is not a requirement of absolute certainty:  sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment" (internal quotation marks and citation omitted)).  Because the search here was justified at its inception and its scope was reasonable under the circumstances, the district court did not err by denying Child's motion to suppress evidence of the marijuana.

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

12

_____

**CYNTHIA A. FRY, Chief Judge**


_____

**RODERICK T. KENNEDY, Judge**