This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                                    **NO. 29,970**

**FREDERICK WILLIAMS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Defendant appeals his convictions for attempt to commit armed robbery (firearm enhancement), conspiracy to commit armed robbery, aggravated assault (deadly weapon) (firearm enhancement), and conspiracy to commit aggravated assault (deadly weapon) (firearm enhancement). [MIO 1; RP 342] We proposed to affirm in a notice of proposed summary disposition, and pursuant to a number of extensions, Defendant has filed a timely memorandum in opposition. Remaining unpersuaded by Defendant's memorandum, we affirm his convictions.

Before addressing Defendant's issues, we briefly set forth the underlying facts. Officers were called to investigate an attempted robbery at OutSource It, Inc. in which shots were fired. [MIO 1-2; DS 3-4] The owner of the store, Mr. Klinger, told the officers that two black males had entered the store, and one had pointed a gun at him, demanded money and told Klinger not to reach for his own gun. [MIO 2; DS 4] One suspect fired two shots at Klinger and missed; Klinger returned fire, and the suspects ran out the door. [MIO 2; DS 4]

Stephanie Moya was parked across the street at the time of the robbery. [MIO 2] She told officers who interviewed her that she heard the shots and saw two black men running from the store. [MIO 2; DS 4] She told them that she got a good look at one of the men who ran directly toward her. [MIO 2; DS 4]

Officer Baca interviewed Moya and showed her a photo array which included Defendant's photo. [MIO 3; DS 5, 8] In the affidavit in support of the criminal complaint and arrest warrant, Baca stated that Moya immediately pointed to Defendant, stating that she recognized him as the suspect running toward her with the gun. [MIO 3; DS 5, 8; RP 131] On the photographic identification form, Moya checked the box indicating that one photo resembled the offender, but she was not positive. [MIO 3] Other witnesses, including Klinger, were unable to positively identify the two black men. [MIO 2-3]

While officers were investigating, a vehicle drove up with two men and one woman inside (the "informants"). [MIO 2] The front passenger handed a piece of paper resembling a business card to Officer Hopper. [MIO 2; DS 4] The informants told Hopper that "these are the guys you are looking for" and drove away. [MIO 2; DS 4] The card described a vehicle, including a license plate number, and described the two men. [MIO 2; DS 4] The informants gave Hopper no identifying information about themselves. [MIO 2; DS 4]

Hopper ran a registration check on the license plate number and learned the vehicle was owned by Enterprise. [DS 4-5] He sent another officer to Enterprise who learned that the vehicle had been leased by Defendant's sister, Anastasia Williams. [DS 5] Officers went to Ms. Williams' residence and towed the vehicle. [DS 5] Ms.

Williams told officers she had not used the vehicle that day, but she believed her brother and her son had used the car along with a young girl she did not know. [MIO 2; DS 5]

**Motion to Suppress Hopper's Testimony**

Defendant claims that Hopper's testimony regarding the informants should have been suppressed because he never recorded their identifications or contact information and the informants' reliability and veracity were never established. [MIO 3-6; DS 6] We disagree.

The district court's ultimate ruling on Defendant's motion to suppress involves mixed questions of fact and law. *See State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. In reviewing the district court's denial of a motion to suppress, we determine "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). We defer to the district court's findings of fact to the extent that they are supported by substantial evidence. *Id.*

In our notice of proposed summary disposition, we proposed to disagree with Defendant's characterization of the informants' testimony as similar to that provided by a confidential informant. [DS 7] Instead, we likened their information to that provided by a citizen informant or an anonymous tip. *Cf. State v. Michael G.*, 106 N.M. 644, 647, 748 P.2d 17, 20 (Ct. App. 1987) (acknowledging that information provided by a citizen-informant need not be subject to the same "credibility

verification requirements" as information provided by an "ordinary police informant[] . . . because citizens presumably have nothing to gain by fabrication").

We agree with Defendant that information provided by an anonymous citizen-informant or other anonymous source is subject to credibility and verification requirements and must require some follow-up investigation to ensure the reliability of the information provided. [MIO 4] *See id.*, *State v. Bedolla,* 111 N.M. 448, 450-452, 806 P.2d 588, 590-592 (Ct. App. 1991). We also agree that there was nothing to indicate that the information relayed to Hopper was based on first-hand knowledge and nothing in the informants' information or Hopper's questioning of them to establish the informants' reliability. [MIO 5]

However, we proposed to affirm because in this case, after receiving the tip, Hopper used the information provided by the informants to continue the investigation; he used it to run a registration check on the license number provided by the informants and then to conduct additional investigation based upon the registration check. [DS 4-5] As Hopper verified the information provided by the informants, we proposed to hold that the district court was justified in allowing Hopper to testify regarding that information even though the informants' identities and the source of their knowledge remained unknown. *Cf. State v. Baca,* 2004-NMCA-049, ¶ 51, 135 N.M. 490, 90 P.3d 509 (observing that even if a confidential source's tip lacks reliability, once it is

6

corroborated by subsequent investigation, it may be used to establish reasonable suspicion); *State v. Crystal B.*, 2001-NMCA-010, ¶ 21, 130 N.M. 336, 24 P.3d 771 (recognizing that prior case law permits investigation of a suspect based upon a tip even though the tip is not sufficiently reliable to establish reasonable suspicion for a search and seizure).

In his memorandum in opposition, Defendant has failed to refute our observation that the officers' subsequent investigation served to corroborate the information supplied by the informants and thus rendered it sufficiently reliable to warrant Hopper's continued investigation of Defendant and the car identified by the informants. Therefore, we remain of the opinion that the information provided by the informants need not have been suppressed. *Cf. State v. Mondragon*, 107 N.M. 421, 423, 759 P.2d 1003, 1005 (Ct. App. 1988) (stating that "[a] party responding to a summary calendar notice must come forward and specifically point out errors of law and fact").

Defendant further argues that Hopper's testimony was testimonial hearsay. [MIO 5-6] He then asserts that statements of the informants and the information provided on the business card should not have been admissible through Hopper's testimony because, without a chance to cross examine these people, admission of these

statements and information would violate his rights guaranteed by the Confrontation Clause. [MIO 5-6; DS 6] We are not persuaded.

We apply a de novo standard of review to questions of admissibility under the Confrontation Clause. *State v. Zamarripa*, 2009-NMSC-001, ¶ 22, 145 N.M. 402, 199 P.3d 846. If the information was not hearsay, Defendant's right to confrontation was never triggered. *See State v. Dietrich*, 2009-NMCA-031, ¶ 53, 145 N.M. 733, 204 P.3d 748 (citing to *Wilson v. Sirmons*, 536 F.3d 1064, 1111 (10th Cir. 2008), in support for its conclusion that an officer's testimony as to statements made by an informant are not testimonial hearsay when the testimony is offered to show how the investigation proceeded or the testifying officer's motivation for investigating a suspect because the informant's statements are not being offered to prove the truth of the matter asserted), *cert. denied*, 2009-NMCERT-002, 145 N.M. 704, 204 P.3d 29.

As discussed in our previous notice, the information obtained from the informants was used only for purposes of Hopper's investigation; it was not used to prove that Defendant was involved in the crimes charged but instead merely to explain the course of Hopper's investigation. Because, as Defendant admits, Hopper only testified as to the course of the investigation and how the informants' information led officers to investigate Defendant's possible involvement in the crimes, [MIO 6] we are not convinced that Hopper's testimony was hearsay. He merely testified that the

information he obtained from the informants led him to investigate the ownership of a car that ultimately proved to be rented by Defendant's sister. Therefore, as Hopper did not introduce the informants' statements to prove that Defendant committed the crimes at issue, Defendant's confrontation rights were never triggered. *Cf. State v. Smith*, 2001-NMSC-004, ¶ 18, 130 N.M. 117, 19 P.3d 254 ("Because the challenged testimony was not hearsay, the Defendant's right of confrontation under the Sixth Amendment was not violated."); *State v. Walters*, 2006-NMCA-071, ¶ 32, 139 N.M. 705, 137 P.3d 645 (quoting *Crawford v. Washington,* 541 U.S. 36, 59 n. 9 (2004), as specifically acknowledging that, "The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"), *rev'd on other grounds,* 2007-NMSC-050, 142 N.M. 644, 168 P.3d 1068.

**Suppression of Baca's Testimony Regarding Moya's Identification**

Defendant argues the district court abused its discretion in allowing Officer Baca to testify that a witness had positively identified Defendant because that testimony was "false and misleading." [MIO 7-9; DS 8] On the Albuquerque Police Department's photographic identification form ("APD form"), Moya initialed the space which provided that "photo number 4 resembles the offender in this case but I am <u>not</u> positive." [DS 6, 9, RP 172] Defendant continues to challenge Baca's testimony and statement in the arrest warrant that a witness "positively identified"

9

Defendant based upon Moya's identification on the APD form. [MIO 8; DS 9]  We are unpersuaded.

As discussed in our previous notice, we review the trial court's decision to allow the testimony for an abuse of discretion.  *See State v. Sanchez*, 1999-NMCA-004, ¶ 6, 126 N.M. 559, 972 P.2d 1150.  "'An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances in the case.'" *State v. Jackson*, 2004-NMCA-057, ¶ 10, 135 N.M. 689, 92 P.3d 1263 (alteration omitted) (citation omitted).  Even though Moya checked the box stating only that photo #4 resembled Defendant, the same APD form, signed by Moya, also states that she immediately "went straight to #4 stating he was the subject  she saw running from [the] store with [the] gun." [RP 172]  Therefore, we are not persuaded that her failure to check the mark "I positively identify photo number ___ as the offender in this case" [RP 172] renders Baca's statement of a positive identification false or misleading.  *Cf. State v. Doran*, 105 N.M. 300, 302, 731 P.2d 1344, 1346 (Ct. App. 1986) (affirming the district court's decision refusing to dismiss the indictment and distinguishing the result in *State v. Reese*, 91 N.M. 76, 570 P.2d 614 (Ct. App.1977), because in *Reese*, it was undisputed that the prosecutor knew that the testimony given to the grand jury was false and knew it at the time the testimony was presented).

For the reasons discussed above and in our previous notice, we affirm on this issue.

**Statements by Defendant While in Custody**

Defendant argues his statements while in custody should have been suppressed because they were not given freely or voluntarily. [MIO 9-12; DS 11] Officers interviewed Defendant while he was in San Diego. [MIO 10; DS 11] He admits that he never confessed to the crime but instead implicated other persons. [MIO 10; RP 239-247] He then claims that the State used a redacted version of his statements to the police in an attempt to incriminate him. [MIO 10]

Defendant argues that the statements were inadmissible because at the time he made them, he was intoxicated by being high on PCP. [MIO 10] He claims that this intoxication was obvious in the photographs taken by the officers in San Diego. [MIO 10; DS 11] He claims his eyes were bloodshot, he slurred his words, he was slumped in the chair, and he was lethargic. [MIO 10; DS 11] He concludes that his intoxication calls into question the voluntariness of his statement and thus the statements should not have been admitted because they were neither voluntary nor given freely. [MIO 10, 12; DS 11]

As discussed in our previous notice, the transcript of Defendant's interview in San Diego is included in the record proper, and it indicates that Defendant was

11

responsive and coherent. [RP 234-267] The transcript shows that Defendant freely spoke with officers after being advised of his right to remain silent. [RP 237-238] Therefore, we are not convinced that the district court erred in admitting Defendant's statements made to officers in San Diego. *Cf. State v. Ortega*, 77 N.M. 7, 14, 419 P.2d 219, 224 (1966) (applying the standards set forth in *Townsend v. Sain*, 372 U.S. 293 (1963), and holding that the defendant's statements were admissible in part because the record contained no indication that the defendant was threatened and, even though alcohol or pills may have been consumed, there was nothing to suggest that the defendant's will was overborne or the statements were of questionable veracity).

**Sufficiency**

Defendant challenges the sufficiency of the evidence to support his convictions. [MIO 12-15; DS 11] In reviewing the sufficiency of the evidence in a criminal case, we must determine whether substantial evidence, either direct or circumstantial, exists to support a verdict of guilty beyond a reasonable doubt for every essential element of the crime at issue. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998). The evidence is reviewed in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction and disregarding all evidence and inferences to the contrary, to ensure that

12

a rational fact finder could have found each element of the crime established beyond a reasonable doubt. *Id.* Finally, we observe that it is for the fact finder to evaluate the weight of the evidence, to assess the credibility of the various witnesses, and to resolve any conflicts in the evidence; we will not substitute our judgment as to such matters. *See State v. Roybal*, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct. App. 1992).

Defendant was convicted of attempt to commit armed robbery (firearm enhancement), conspiracy to commit armed robbery, aggravated assault with a deadly weapon (firearm enhancement), and conspiracy to commit aggravated assault with a deadly weapon (firearm enhancement). [DS 2; RP 342-347] Robbery is defined as "the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." NMSA 1978, § 30-16-2 (1973). [RP 298] Commission of armed robbery while armed with a deadly weapon is a second degree felony. *Id.* Aggravated assault consists in part of "unlawfully assaulting or striking at another with a deadly weapon." NMSA 1978, § 30-3-2(A) (1963). [RP 300] Attempt is defined as "an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." NMSA 1978, § 30-28-1 (1963). [RP 298] Finally, conspiracy consists of "knowingly combining with another for the purpose of committing a felony within or without this state." NMSA 1978, § 30-28-2 (1979). [RP 299, 301]

13

As previously set out in analyzing Defendant's other issues, the evidence in support of Defendant's convictions includes the testimony provided by Klinger that two black men entered his store and demanded money while pointing a gun at him. [MIO 14] The men fired two shots at Klinger. [MIO 14] Moya testified that she heard the shots and saw two men running from the store. [MIO 14] She got a "really good look" at one man and pointed out Defendant when shown a photo array which included Defendant's photo. [MIO 15]

Hopper testified that officers were able to identify Defendant as a possible suspect when they learned that a car belonging to Defendant's sister may have been used by Defendant on the day of the attempted robbery. [MIO 15] Defendant's own statements placed him at the scene of the robbery with his friend Roberto even though he told officers that he did not know that Roberto would suddenly pull out a gun to attempt to rob Klinger. [MIO 17] Additional testimony was apparently provided by two other witnesses, Piper and Christian, although Defendant fails to inform this Court of the substance of their testimony except to state that they did not clearly see a face but they did see a gun. [MIO 16]

Defendant asserts that the evidence is insufficient to show that he was in possession of a firearm because no one could testify that they saw Defendant with the firearm. [MIO 16] We disagree. Klinger testified that the persons who attempted to

14

rob him pointed a gun at him, and Moya testified that Defendant was seen running away from the store and she saw that Defendant had a shiny silver gun. [MIO 16] This is sufficient. *See State v. Burdex*, 100 N.M. 197, 201, 668 P.2d 313, 317 (Ct. App. 1983) (holding that given that "there was no evidence to support [the] defendant's contention that firearms were not used in the commission of the robberies, his request that the jury be instructed as to the lesser included offenses of robbery (without a deadly weapon) was properly denied" and it was irrelevant that the defendant himself did not use the gun); *State v. Roque*, 91 N.M. 7, 9-10, 569 P.2d 417, 419-420 (Ct. App. 1977) (recognizing that in a conviction for the offense of robbery with a firearm, it is irrelevant whether the defendant or a co-defendant is the one who is actually armed because the statute does not limit imposition of an enhanced sentence to only those situations where the defendant personally uses the firearm).

Defendant also argues that the evidence was insufficient to establish that he had the requisite knowledge to commit conspiracy because he told officers he did not know that Roberto was going to attempt to commit the robbery. [MIO 17] *See* § 30-28-2 . We are unpersuaded because the jury is free to disbelieve the defense's version of the facts. *See Rojo*, 1999-NMSC-001 ¶ 19; *cf. In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 567, 915 P.2d 318, 323 (observing that in reviewing the sufficiency of the evidence, the question is whether the trial court's "decision is

supported by substantial evidence, not whether the trial court could have reached a different conclusion"). Furthermore, the same evidence proving that Defendant, along with another man, committed the crimes of attempted robbery and aggravated assault is sufficient to prove the conspiracy charge because it is sufficient to show that Defendant and another person knowingly combined to attempt to commit robbery and to commit aggravated assault with a deadly weapon. *See State v. Johnson*, 2004-NMSC-029, ¶ 49, 136 N.M. 348, 98 P.3d 998 (stating that an agreement to establish conspiracy need not be proven by direct evidence but instead may be in the form of a mutually implied understanding and may be inferred from circumstantial evidence); *State v. Mead*, 100 N.M. 27, 30, 665 P.2d 289, 292 (Ct. App. 1983) conspiracy need not be proven by direct evidence of an agreement); *State v. Dressel*, 85 N.M. 450, 451, 513 P.2d 187, 188 (Ct. App. 1973) (conspiracy is seldom susceptible of direct proof and may be proven by inference from circumstantial evidence).

**Conclusion**

For the foregoing reasons as well as those set forth in our notice of proposed disposition, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**JONATHAN B. SUTIN, Judge**