**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-104**

**Filing Date:  September 27, 2010**

**Docket No. 29,489**

**STATE OF NEW MEXICO,**

 **Plaintiff-Appellee,**

**v.**

**GAGE R.,**

 **Child-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Freddie J. Romero, District Judge**

Gary K King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Office of Craig C. Kling
Craig C. Kling
San Diego, CA

for Appellant

## OPINION

**VANZI, Judge.**

**{1}** Child appeals the denial of his motion to suppress evidence obtained during a search of his backpack at school.  Child entered into a conditional plea, and pled no contest to the unlawful carrying of a deadly weapon on school premises.  For the reasons discussed in this opinion, we reverse and remand for a determination of whether the search was justified by the requisite individualized and particularized suspicion that Child may have been bringing tobacco products onto the campus.

1

## BACKGROUND

**{2}** Before the start of school on the morning of October 16, 2008, a Roswell High School security officer observed Child, along with "an unusually large gathering of students," across the street from the school in an area known as the "smoker's corner." The security officer saw students smoking but could not remember if he specifically saw Child smoking. When the school bell rang, the group of students from the smoker's corner crossed the street and entered school property. As was the consistent practice of the school, at least one or two times per week during the school year, the school security officer detained all of the students, including Child, patted them down, and searched their backpacks for tobacco and tobacco products. During the search of Child, the security officer found a pipe and a knife in Child's backpack, as well as a lighter, although he could not recall if the lighter was found on Child's person or in his backpack. Child was the only student found with non-tobacco contraband that day.

**{3}** The school policy at Roswell High School prohibits smoking, tobacco products, lighters, and cigarettes on school property. As a result, the security officer—who is a school official, not a law enforcement officer—is authorized to conduct searches for items that violate the policy such as tobacco products and lighters. Searches are conducted on randomly selected days of all students entering school grounds from the smoker's corner, especially on those days when a larger than usual gathering of students are observed at the corner. Students understand that they can be randomly searched. When a child has contraband it is seized, but not every child has contraband. In this case, the security officer suspected that Child might have tobacco or tobacco products based on his presence at the smoker's corner where "everyone hangs out to smoke."

**{4}** As a consequence of the items found in the search, the State petitioned for an adjudication of delinquency for unlawful carrying of a deadly weapon on school premises, contrary to NMSA 1978, Section 30-7-2.1 (1994), and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1 (2001). In the district court, Child moved to suppress the evidence seized as a result of his search. Child argued that the security officer lacked individualized or particularized suspicion that Child had committed a crime or violated a school policy. The district court denied Child's motion, ruling in pertinent part that the security officer "did not have or need individualized suspicion that each child [entering the school from the smoker's corner] was in possession of tobacco products or a lighter." Instead, the district court reasoned that the search was reasonable and justified at its inception given Child's presence before the commencement of school at the smoker's corner.

**{5}** The parties entered into a plea and disposition agreement, under which Child pleaded no contest to unlawful carrying of a deadly weapon on school premises, and the State agreed to dismiss the possession of drug paraphernalia charge. Pursuant to the no-contest plea, the court entered a consent decree suspending the proceedings and placing Child on supervised probation for six months. This appeal timely followed.

## PRESERVATION

**{6}** Before proceeding to the issue of the search, we first address the State's argument that Child failed to reserve his right to appeal the denial of his motion to suppress. *See generally* Rule 5-304(A)(2) NMRA (allowing a defendant to enter a conditional guilty plea, reserving in writing the right to appeal an issue raised in a pretrial motion and adversely decided by the district court). The State contends that Child did not meet the "critical requirements" for a conditional plea because neither the plea agreement nor the consent decree "expressed an intention to preserve a particular pretrial issue for appeal." *State v. Hodge*, 118 N.M. 410, 417, 882 P.2d 1, 8 (1994) (internal quotation marks and citation omitted). We note that in this case, the "WAIVER OF DEFENSES AND APPEAL" provision of Child's plea and disposition agreement is crossed out. The State argues, however, that at most, the crossed-out provision suggests that the parties did not reach agreement on whether Child was waiving the right to appeal and that it fails to express an intention to reserve the right to appeal; therefore, the appeal should be dismissed. We disagree.

**{7}** Although the plea does not specifically "reserve a particular pretrial issue for appeal," *see id.*, given that the waiver provision was crossed out and that Child's motion to suppress was premised on one central question—whether the search was justified absent particularized suspicion—it is obvious that Child intended to reserve the right to appeal this issue. Moreover, we note that Child's attorney specifically referred to the crossed-out provision when electing to enter into the plea, and that the district court also stated that Child would retain his right to appeal should he so desire. We conclude that this is sufficient to reserve Child's right to appeal. *See id.* (providing for a "substance-over-form" approach in considering whether an issue is reserved for appeal, rather than requiring "rigid adherence" to reservation requirements); *see also State v. Padilla*, 2006-NMCA-070, ¶¶ 10-12, 139 N.M. 700, 137 P.3d 640 (holding that an issue was sufficiently reserved in a plea, even though not reduced to writing, when both the prosecution and the district court were aware of the defendant's intent to appeal). Consequently, we proceed to address the district court's ruling concerning Child's motion to suppress.

**DISCUSSION**

**{8}** A ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Garcia*, 2005-NMSC-017, ¶ 27, 138 N.M. 1, 116 P.3d 72. We "review[] factual findings under a substantial evidence standard, viewing the facts in the light most favorable to the prevailing party, and we review de novo whether the district court correctly applied the law to the facts." *State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337. Whether a search was reasonable is a legal determination for this Court. *In re Josue T.*, 1999-NMCA-115, ¶ 14, 128 N.M. 56, 989 P.2d 431. We therefore apply a de novo review to the district court's legal determination that the search of Child in this case was reasonable. *See id.*

**{9}** As we have noted, our standard of review requires that we first assess whether the district court's findings of fact are supported by substantial evidence. The parties do not dispute the factual underpinnings of this case, and we therefore turn to the second prong of our analysis, whether it was reasonable under the Fourth Amendment to the United States Constitution for the school security officer to conduct a search of Child and his backpack

absent a particularized or individualized suspicion. We start with a review of federal precedent in this area and then turn to a discussion of the district court's ruling. We will then address the development of this issue under New Mexico law.

**{10}** In *New Jersey v. T.L.O.*, 469 U.S. 325, 340-41 (1985), the United States Supreme Court held that school officials' need for maintaining order and discipline in school is such that school officials do not need either probable cause or a search warrant to search students and their belongings. Instead, *T.L.O.* provides that "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *Id.* at 341. In evaluating whether a search is reasonable under the circumstances, *T.L.O.* requires that courts apply a two-prong test: (1) whether the school authority's search was justified at its inception and (2) whether the search was reasonably related in scope to the circumstances that justified the interference. *Id.*; *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 129 S. Ct. 2633, 2639 (2009) (holding that when "reasonable suspicion" exists, "a school search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search"). At issue in the present case is the first prong of the test: whether the search was justified at its inception.

**{11}** A search is justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated, or is violating, either the law or rules of the school. *T.L.O.*, 469 U.S. at 341-42. With regard to individualized suspicion in particular, however, the *T.L.O.* Court made clear that it was not deciding "whether individualized suspicion is an essential element of the reasonableness standard we adopt for searches by school authorities." *Id.* at 342 n.8. Specifically, the Court stated that "[b]ecause the search of T.L.O.'s purse was based upon an individualized suspicion that she had violated school rules, we need not consider the circumstances that might justify school authorities in conducting searches unsupported by individualized suspicion." *Id.* (citation omitted). Thus, the Court noted that "[e]xceptions to the requirement of individualized suspicion are generally appropriate only where the privacy interests implicated by a search are minimal and where other safeguards are available to assure that the individual's reasonable expectation of privacy is not subject to the discretion of the official in the field." *Id.* (internal quotation marks and citation omitted).

**{12}** Since *T.L.O.*, the United States Supreme Court has established that school searches do not always need to be supported by individualized suspicion. The Court has held that suspicionless searches can be justified in certain limited circumstances by "special needs, beyond the normal need for law enforcement." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) (internal quotation marks and citation omitted). In *Vernonia*, this "special needs" doctrine was used to uphold a school district's policy of subjecting student athletes to random, suspicionless drug tests. *Id.* at 650. In holding the policy constitutionally permissible, the Court found that student athletes "who voluntarily participate in school athletics have reason to expect intrusions upon normal rights and privileges, including privacy." *Id.* at 657. More recently, the United States Supreme Court held that schools may conduct random, suspicionless drug tests not only of student athletes but also of any student who participates in competitive extracurricular activities (such as Future Farmers of America, choir, or band), provided that the student's participation in such activities is conditioned on consent to such drug testing. *Bd. of Educ. of Indep. Sch. Dist. No. 92 v.*

4

*Earls*, 536 U.S. 822, 829, 837 (2002) (noting that "[i]n certain limited circumstances, the Government's need to discover such latent or hidden conditions, or to prevent their development, is sufficiently compelling to justify the intrusion on privacy entailed by conducting such searches without any measure of individualized suspicion." (internal quotation marks and citation omitted)). At its core, the "special needs" category requires courts to look at whether there is a safety concern that is substantial enough to override the individual's privacy interest and to suppress the Fourth Amendment's requirement of individualized suspicion. *See id.* at 836.

**{13}** We find it significant that each of the "special needs" cases decided by the United States Supreme Court in the school context is a very limited exception to the reasonable suspicion requirement that permits searches of public school students. In particular, these cases involve obtaining consent through a threatened withholding of a benefit when consent is not given. We do not believe—and the State does not argue—that the "special needs" doctrine has any application in this case. Therefore, it is appropriate to analyze the factual circumstances in this case under the "reasonable suspicion" standard set forth in *T.L.O.* and adopted by our courts. *See* 469 U.S. at 342.

**{14}** New Mexico courts have long applied the two-prong standard articulated in *T.L.O.* to determine whether searches of students are justified. *See Kennedy v. Dexter Consol. Sch.*, 2000-NMSC-025, ¶¶ 16-19, 129 N.M. 436, 10 P.3d 115 (*Kennedy I*). Applying the *T.L.O.* analysis in *Kennedy I*, our Supreme Court specifically required individualized suspicion before school officials may conduct a lawful strip search of a student. *Kennedy I*, 2000-NMSC-025, ¶¶ 14-15. However, with the exception of the "special needs" doctrine and the *Kennedy I* decision discussed above, neither the United States Supreme Court nor the New Mexico Supreme Court has stated explicitly when individualized or particularized suspicion is needed when conducting a search on school grounds.

**{15}** In the present case, the district court concluded that the search of Child's backpack was a minimal intrusion and that it effectively fell within an exception to the requirement of individualized suspicion as contemplated by *T.L.O.* The district court ruled that individualized suspicion is required only when a student is subjected to an intrusive strip search and that a *T.L.O.* analysis does not otherwise require individualized suspicion for less intrusive school searches. In support of its decision, the district court relied on the holding in *Kennedy I* to find that individualized suspicion is necessary before school officials may conduct a lawful strip search of a student given its intrusive nature. While we acknowledge the footnote in *T.L.O.*, 469 U.S. at 342 n.8, anticipated that exceptions to the requirement of individualized suspicion may exist where the student's privacy interests implicated by a search are minimal and other safeguards are present, we conclude that the search of Child and his backpack did not fall within this narrow exception.

**{16}** At the outset, we observe that *Kennedy I* does not hold that individualized suspicion is required *only* when school officials conduct a strip search, and for this reason, we conclude that the district court read the holding in that case too narrowly. In its analysis, the New Mexico Supreme Court in *Kennedy I* refers to two New Mexico school search cases that do not involve strip searches to support its holding that searches of students require individualized suspicion in order to pass constitutional scrutiny. 2000-NMSC-025, ¶ 17.

5

*Kennedy I* cited to *State v. Michael G.*, 106 N.M. 644, 647, 748 P.2d 17, 20 (Ct. App. 1987), and noted that in that case the search of the student's locker "proceeded not only with individualized suspicion" but was justified by information from an eyewitness who saw the student attempt to distribute drugs. *Kennedy I*, 2000-NMSC-025, ¶ 17. Further, *Kennedy I* cited with approval *Doe v. State*, 88 N.M. 347, 352-53, 540 P.2d 827, 832-33 (Ct. App. 1975), which upheld the search of a student who had been detained and was required to turn over a marijuana pipe because there was individualized suspicion and because school officials had seen the student smoking out of a pipe. *Kennedy I*, 2000-NMSC-025, ¶ 17. *Kennedy I*'s predecessor, *Kennedy v. Dexter Consol. Sch.*, 1998-NMCA-051, ¶ 13, 124 N.M. 764, 955 P.2d 693 (*Kennedy II*), *rev'd in part on other grounds by Kennedy*, 2000-NMSC-025, ¶¶ 20-22, similarly refers to out-of-state case law that do not involve a strip search to support this Court's conclusion that individualized suspicion is ordinarily necessary for a search by school officials. *See, e.g.*, *DesRoches v. Caprio*, 974 F. Supp. 542 (E.D. Va. 1997) (backpack search for missing shoes); *Burnham v. West*, 681 F. Supp. 1160 (E.D.Va. 1987) (search of pockets, purses, and bags); *In re Doe*, 887 P.2d 645, 655 (Haw. 1994) (holding that "[b]ecause a search of a student's wallet, purse or other bag carried on his or her person is undoubtedly a severe violation of subjective expectations of privacy, . . . individualized suspicion is a necessary element in determining reasonableness where . . . the principal emptied the contents of [the m]inor's purse" (internal quotation marks and citation omitted)).

**{17}**    In addition to the discussion of cases requiring individualized suspicion set forth in both *Kennedy* opinions, other decisions from this Court also suggest that individualized suspicion is required under the *T.L.O.* standard of reasonableness for school searches in circumstances comparable to the present case. While these cases have not explicitly addressed, as did *Kennedy I*, whether individualized suspicion is required to justify searches of students and their belongings, the holdings generally presuppose that this requirement must be met. For example, in *Josue T.*, we noted that, to be justified at its inception, a school search must be based on more than "an inchoate and unparticularized suspicion or hunch." 1999-NMCA-115, ¶ 23 (internal quotation marks and citation omitted). Because the facts in that case established that the student appeared evasive and smelled of burnt marijuana, we held that school officials were justified in searching the student. Similarly, in *State v. Pablo R.*, we recognized that the reasonable suspicion to justify the search of the student and his jacket could not be based on unparticularized suspicion, and held that the search was unreasonable under the circumstances because the school official did not suspect the child of engaging in any criminal activity, did not smell marijuana on him, and had no knowledge that the child was carrying a weapon or marijuana. 2006-NMCA-072, ¶¶ 14, 16, 139 N.M. 744, 137 P.3d 1198.

**{18}**    Finally, *State v. Crystal B.*, 2001-NMCA-010, ¶¶ 21-22, 130 N.M. 336, 24 P.3d 771 (filed 2000), supports the conclusion that particularized suspicion is required in order to justify a search at its inception. In *Crystal B.*, we held that a school official violated a student's Fourth Amendment rights when the school official, after receiving a tip that the student was smoking in an alley off campus, seized the student, ordered her into his car, and took her back to the school. *Id.* ¶¶ 22, 25. After returning to campus, the school official searched the student and found a small amount of marijuana in her book bag. *Id.* ¶ 11. Looking to the reasonableness of the school official's actions, we held that even assuming the school official had the authority to leave school property to investigate a violation of

school rules, the seizure of the student was unreasonable. *Id.* ¶¶ 21-22. Specifically, when the student was found in the alley, the school official did not see the student smoking, did not smell any smoke, and did not see anyone trying to hide anything. *Id.* ¶ 22. Thus, any suspicion gleaned from the tip was dispelled, and the school official had no justification for the seizure as there was no evidence that the student was violating school policy or the law. *Id.* Accordingly, we held that the seizure and subsequent search were both unreasonable, and the evidence should have been suppressed. *Id.* ¶ 25.

{19}    In summary, it appears that our cases have taken the position that a search is warranted only if the circumstances create an individualized suspicion that a particular rule has been violated and that the search will serve to produce evidence of that violation. Analyzing the factual circumstances of this case, we conclude that the search of a group of students gathering at the "smoker's corner," without reason to suspect that any particular student is in possession of contraband, is not constitutionally sound. We concede that in any sufficiently large group, there is a statistical probability that someone will have contraband in his or her possession. But, it is our view that the Fourth Amendment demands more than a generalized probability, and a student's mere association with or presence among suspected wrongdoers without more does not provide a sufficient basis for a search by school officials. In this case, the sweeping and indiscriminate search of only those students who happen to be seen at a particular location off campus where smokers often gather ignores the need to ascertain individualized suspicion and exceeds the bounds of reasonableness that *T.L.O.* and our case law require. We thus hold that, even assuming a lessened expectation of privacy, some articulable facts that focus suspicion on a specific student must be demonstrated before any school search can be carried out.

{20}    In apparent anticipation of our holding that the search of Child and his backpack required individualized suspicion, the State nevertheless urges this Court to affirm the district court's denial of the motion to suppress. The State contends that, although the district court ruled the security officer "did not have or need individualized suspicion that each child was in possession of tobacco products or a lighter," affirmance is merited because such individualized suspicion to search Child and his backpack was nevertheless present. In support of its argument, the State acknowledges that Child's mere presence at the smoker's corner prior to stepping onto the school campus does not provide the requisite individualized suspicion. *See generally State v. Jason L.*, 2000-NMSC-018, ¶ 21, 129 N.M. 119, 2 P.3d 856 (noting that New Mexico has not dispensed with the need for individualized suspicion and affirming the lower court's determination that the actions of the defendant's companion could not be used to justify the defendant's detention); *State v. Eli L.*, 1997-NMCA-109, ¶¶ 3, 11, 124 N.M. 205, 947 P.2d 162 (holding that the child's proximity to the initial reported disturbance, the child's dress in gang-attire and the child's gang-whistle, and the fact that another juvenile in the area had been found carrying a concealed weapon did not provide the necessary individualized suspicion to justify the search of the child in the school parking lot). However, the State argues that individualized suspicion is not solely dependent on Child's presence at the smoker's corner and subsequent entry onto the school campus. Instead, the State directs us to evidence that tobacco products had been found during a search of Child earlier in the school year when Child had similarly entered campus from the smoker's corner. Given Child's prior misconduct, the State argues that the requisite

7

individualized suspicion existed to justify the search of Child when he was again seen entering campus from the smoker's corner.

**{21}** We recognize that a reasonable suspicion determination requires an assessment of "the totality of the circumstances and precludes . . . [a] divide-and-conquer analysis" so that each individual factor or circumstance is not viewed in a vacuum. *State v. Neal*, 2007-NMSC-043, ¶ 28, 142 N.M. 176, 164 P.3d 57 (omission in original) (alteration in original) (internal quotation marks and citation omitted). Consistent therewith, we further recognize federal case law provides that "in conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus." *United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005). New Mexico case law extends a similar consideration to a school official's prior knowledge of a suspect student's behavior when considering the reasonableness of a school search. *See Pablo R.*, 2006-NMCA-072, ¶¶ 13-14 (considering the factor that the school official had no history of trouble with the child in determining that the search was not justified at its inception); *Doe*, 88 N.M. at 352, 540 P.2d at 832 (providing that a child's history of disciplinary problems is a factor to consider in determining whether the search of a child is justified).

**{22}** In the present case, however, we are unwilling to engage in the analysis suggested by the State because of the way the case was argued and decided below. As noted above, the State steadfastly maintained below that individualized suspicion was not needed, and the district court agreed. As a result, the question of individualized suspicion was not fully developed before the district court, nor was Child given a full and fair opportunity to respond to the effect his prior misconduct might have on the individualized suspicion inquiry. *See Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (providing that our Supreme Court will not affirm a district court ruling on a ground not relied upon by the district court if reliance on the new ground would be unfair to appellant, and as part of this, the Court "on appeal . . . will not assume the role of the trial court and delve into . . . fact-dependent inquiries" (omissions in original) (alteration omitted)); *State v. Wilson*, 1998-NMCA-084, ¶ 17, 125 N.M. 390, 962 P.2d 636 (recognizing that unfairness precludes an appellate court from affirming on a fact-dependent ground not determined below).

**{23}** We note that the district court expressly found that "Child had previously been searched during the 2008 school year and was found to have a pack of cigarettes." While we agree that tobacco use and possession could supply the particularized suspicion necessary to support a search, the district court did not state whether the security officer in the present incident was the same security officer that had searched Child previously and found cigarettes, nor did the court make findings regarding whether the security officer recalled that Child had previously been found with tobacco products when he was searched the second time. Further, Child was not put on notice of the importance of or need to inquire into those matters. *See generally Meiboom*, 2000-NMSC-004, ¶ 20 (holding that our Supreme Court will not affirm on a fact-dependant ground not determined below); *State v. Williams*, 2006-NMCA-062, ¶ 27, 139 N.M. 578, 136 P.3d 579 (recognizing that "[t]he reasonableness of official suspicion must be measured by what the officers knew before they conducted their search" (citation omitted)); *Wilson*, 1998-NMCA-084, ¶ 17 (stating that fairness tempers the precept "that an appellate court can uphold a trial court's decision if it is right for any reason").

8

**{24}** Because factual matters remain to be considered and resolved in light of our holding that individualized suspicion was required to justify the search, we decline to resolve these matters in the first instance on appeal. Accordingly, we remand for consideration of whether the facts in this case support a conclusion that the school security officer had individualized and particularized suspicion to justify the search of Child and his backpack.

**{25}** Finally, Child argued below and on appeal that the search was illegal under both the Federal and State Constitutions. Because we conclude that the Federal Constitution affords Child relief, we need not address his claims under the New Mexico Constitution. *See State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 7, 130 N.M. 386, 25 P.3d 225 (declining to examine the defendant's state constitutional claim "[i]f the [F]ederal Constitution affords [the d]efendant the protection he seeks").

**CONCLUSION**

**{26}** Based on the foregoing discussion, we conclude that the school security officer needed individualized suspicion that Child violated the school policy prohibiting the possession of tobacco products on school grounds in order to justify the search of Child and his backpack. We reverse the district court's ruling to the contrary and remand for further consideration.

**{27}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**


**Topic Index for *State v. Gage R.*, Docket No. 29,489**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CD** | **CHILDREN** |
| CD-CC | Children's Code |
| CD-CG | Children, General |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-WO | Weapons Offences |

| | |
|---|---|
| **CA** | **CRIMINAL PROCEDURE** |
| CA-MR | Motion to Suppress |
| CA-PP | Plea and Plea Bargaining |
| CA-PC | Prior Convictions |
| CA-RS | Reasonable Suspicion |
| CA-SZ | Search and Seizure |
| CA-SE | Substantial or Sufficient Evidence |
| CA-WS | Warrantless Search |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| CT-NM | New Mexico Constitution, General |
| CT-SU | Suppression of Evidence |
| | |
| **GV** | **GOVERNMENT** |
| GV-ES | Education and Schools |