**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: _____**

**Filing Date: July 24, 2014**

**Docket No. 32,476**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**JOANN YAZZIE,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Gary K. King, Attorney General
Corinna Laszlo-Henry, Assistant Attorney General
Santa Fe, NM

for Appellee

The Law Offices of the Public Defender
Jorge A. Alvarado, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**KENNEDY, Chief Judge.**

**{1}** Under the United States and New Mexico Constitutions, a police officer, before executing a traffic stop, must be aware of individualized, particularized, and articulable facts that supporting a belief that a violation is occurring in his presence. If the only facts are that the officer runs a license plate check to ascertain whether a vehicle is insured and the computer indicates no more than that the insurance status is "unknown," the officer possesses insufficient facts from which to form a reasonable suspicion that would support

a traffic stop. The evidence the State presented later to the district court that the Motor Vehicle Department's (MVD) statistics could correlate unknown insurance status with being uninsured cannot serve as a proxy to supply evidence of the officer's knowledge at the time he made his decision. The district court having held otherwise, we reverse.

## I.    BACKGROUND

**{2}**    The facts in this case are simple and undisputed. Joann Yazzie (Defendant) was driving a vehicle on November 23, 2010, when Officer James Rempe entered its license plate number into the mobile data terminal (MDT) in his police car, which informed him that Defendant's vehicle insurance status was "unknown." He then executed a traffic stop. Defendant entered a conditional plea in the magistrate court for driving under the influence, reserving the question of whether her stop was based on reasonable suspicion and, upon her conviction, appealed her case de novo to the district court. In the district court, the State stipulated that "the only basis for the stop in this case was Officer Rempe's receiving information from [MVD] that . . . the status of the vehicle's insurance was unknown." In the district court, Defendant again moved to have her stop ruled unconstitutional because the officer lacked sufficient facts to justify seizing her.

**{3}**    It appears that the State's strategy in this case was to establish grounds for proving the meaning of "unknown" insurance status. At the beginning of the suppression hearing, the prosecutor stated that the State sought a witness from the MVD to testify about what "unknown" insurance status would mean in order to quell a recurring issue. The district court agreed and stated:

> I think the State's looking for this expert based on my previous decisions that insurance unknown just doesn't cut it to me. I think it needs to be more, and I think the State's following my previous directive that if they don't have more, I'm going to be suppressing these stops.

The State called a witness from the MVD, who testified that there was a high likelihood that "unknown" insurance status may mean "uninsured." From this evidence, the district court concluded that "[g]iven the 80% to 90% chance that the owner of a vehicle with an unknown insurance status has not yet obtained evidence of financial responsibility for the vehicle, it was reasonable for Officer Rempe to suspect that . . . Defendant did not have evidence of financial responsibility for her vehicle as she drove it on November 23, 2010." Defendant does not contest the MVD witness's opinion regarding the likelihood that unknown status correlates with uninsured vehicles, but asserts that the correlation is irrelevant to the central question of whether the officer had reasonable suspicion at the time of the stop. No evidence was ever presented to the court as to what the officer suspected, or did not suspect, about "unknown" insurance status. The district court held the stop to be constitutionally valid, and Defendant appealed.

## II.    DISCUSSION

2

**{4}** A rubric[1] is useful in working through the puzzle that this case presents. Both the State and the district court descended into a logical error by focusing on the MVD testimony and not the specific stop. The proper question was not what the general likelihood might be of an uninsured motorist being of unknown status on the officer's computer, but only whether knowing no more than Defendant's unknown status at the time of the stop provided Officer Rempe with a sufficiently reasonable suspicion for seizing Defendant. For the following reasons, we conclude that the district court lacked a basis in fact to find that the stop was constitutionally permissible.

## A. "Known Knowns"

### 1. Standard of Review

**{5}** Our review of the denial of a motion to suppress presents us with a mixed question of law and fact. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. We review a district court's findings of fact under a substantial evidence standard. *See Shearton Dev. Co. v. Town of Chilili Land Grant*, 2003-NMCA-120, ¶ 32, 134 N.M. 444, 78 P.3d 525. "We view the facts in a manner most favorable to the prevailing party [as they may be supported by substantial evidence] and defer to the district court's findings." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). We then review de novo the constitutional question of whether the stop was reasonable. *State v. Gonzales*, 2010-NMCA-023, ¶ 4, 147 N.M. 735, 228 P.3d 519. "Because the facts in this case are undisputed, we . . . determine whether the [district] court correctly applied the law to those facts." *State v. Duran*, 2005-NMSC-034, ¶ 20, 138 N.M. 414, 120 P.3d 836, *overruled on other grounds by State v. Leyva*, 2011-NMSC-009, 149 N.M. 435, 250 P.3d 861.

### 2. Standard for an Investigative Stop

**{6}** "Article II, Section 10, of the New Mexico Constitution and the Fourth Amendment to the United States Constitution control the validity of investigative stops." *State v. Anaya*, 2008-NMCA-020, ¶ 6, 143 N.M. 431, 176 P.3d 1163. To the extent that Defendant argues

---

[1]"Reports that say that something hasn't happened are always interesting to me, because as we know, there are known knowns; there are things we know we know. We also know there are known unknowns; that is to say we know there are some things we do not know. But there are also unknown unknowns—the ones we don't know we don't know. And if one looks throughout the history of our country and other free countries, it is the latter category that tend to be the difficult ones." Department of Defense News Briefing - Secretary Rumsfeld & Gen. Myers, Presenter: Secretary of Defense Donald H. Rumsfeld ( F e b r u a r y   1 2 ,   2 0 0 2 )   *a v a i l a b l e   a t* http://www.defense.gov/transcripts/transcript.aspx?transcriptid=2636 (last visited July 8, 2014).

that Article II, Section 10 provides greater protection than the United States Constitution from unwarranted governmental intrusions, we agree. *State v. Garcia*, 2009-NMSC-046, ¶ 29, 147 N.M. 134, 217 P.3d 1032 (holding that the basis for our expanded view is greater protection of personal privacy). " 'In the context of a non-pretextual traffic stop, we require that, to satisfy Article II, Section 10, a police officer must have reasonable suspicion of criminal activity or probable cause that the traffic code has been violated.' " *State v. Hicks*, 2013-NMCA-056, ¶ 14, 300 P.3d 1183 (quoting *State v. Ochoa*, 2009-NMCA-002, ¶ 25, 146 N.M. 32, 206 P.3d 143). Under applicable constitutional standards, we know that a traffic stop must be " 'justified at its inception.' " *State v. Reynolds*, 1995-NMSC-008, ¶ 8, 119 N.M. 383, 890 P.2d 1315. That is to say, "[b]efore a police officer makes a traffic stop, he must have a[n objectively] reasonable suspicion [that the motorist is engaged in some form] of illegal activity." *Anaya*, 2008-NMCA-020, ¶ 6; *State v. Harbison*, 2007-NMSC-016, ¶ 13, 141 N.M. 392, 156 P.3d 30 (requiring reasonable suspicion at that moment); *State v. Williams*, 2006-NMCA-062, ¶ 23, 139 N.M. 578, 136 P.3d 579. The primary focus of our review concentrates on the facts that are known to the officer. *Hubble*, 2009-NMSC-014, ¶ 8; *State v. Madsen*, 2000-NMCA-050, ¶ 9, 129 N.M. 251, 5 P.3d 573. "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted).

**{7}** "[T]he State has the burden to establish reasonable suspicion to stop the motorist. If the State fails in its burden, the stop is unconstitutional." *State v. Gonzales*, 2011-NMSC-012, ¶ 12, 150 N.M. 74, 257 P.3d 894. We objectively consider the totality of the circumstances surrounding the stop in light of all the information possessed by the officer at the time of the stop. *Williams*, 2006-NMCA-062, ¶ 23; *Cave v. Cooley*, 1944-NMSC-050, ¶ 8, 48 N.M. 478, 152 P.2d 886 (justifying that an arrest "must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses" (internal quotation marks and citation omitted)). "An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor." *Bolt v. Davis*, 1962-NMSC-085, ¶ 30, 70 N.M. 449, 374 P.2d 648 (alteration, internal quotation marks, and citation omitted). The "inferences" our cases talk about are inferences made by the officer from presently known facts that would lead the officer to believe that criminal activity is afoot. *State v. Pallor*, 1996-NMCA-083, ¶ 12, 122 N.M. 232, 923 P.2d 599. The purpose of requiring reasonable suspicion "is to prevent and invalidate police conduct based on hunches, which are, by definition, subjective." *Ochoa*, 2009-NMCA-002, ¶ 25 (internal quotation marks and citation omitted). Reasonable suspicion requires a greater than minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion[.]" *State v. Funderburg*, 2007-NMCA-021, ¶ 14, 141 N.M. 139, 151 P.3d 911, *rev'd*, 2008-NMSC-026, 144 N.M. 37, 183 P.3d 922. The United States Supreme Court held that stopping a vehicle to check license and registration is unreasonable absent an articulable and reasonable suspicion that the driver is unlicensed, the vehicle is unregistered, or there is some other violation of the law. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Stopping

to ascertain insurance status is no different. *See State v. Dixson*, 633 S.E.2d 636, 638 (Ga. App. 2006) (holding that unknown status of insurance does not constitute reasonable suspicion for a traffic stop).

**{8}**     In this case, we determine whether the district court's findings are supported by substantial evidence, and we further evaluate the sufficiency of the evidence to demonstrate whether, at the time of the stop, Officer Rempe had sufficient knowledge that Defendant was, at that time, committing a violation of the insurance statute. "When a case is assigned to a general calendar, the factual basis for the issues must be contained in the record of proceedings made below." *State v. Jensen*, 1998-NMCA-034, ¶ 18, 124 N.M. 726, 955 P.2d 195.

### 3.     Officer Rempe's Basis for the Stop

**{9}**     Owing to the stipulation of counsel and the lack of any testimony by Officer Rempe, we know that the officer's sole basis for the traffic stop was the information on his MDT, indicating that the status of Defendant's insurance on the vehicle was unknown. The officer also filed a probable cause statement with the criminal complaint in the magistrate court that states: "I ran a vehicles license plate . . . on my MDT. I stopped the vehicle because the insurance returned 'unknown.' I made contact with [Defendant]." The returned information known to the officer did not provide any specific articulable facts to support a suspicion that Defendant was committing a crime. *Dixson*, 633 S.E.2d at 638. The State relied on *State v. Candelaria,* which permitted a stop based on an allowable inference that the owner of a car who has a suspended driver's license will be driving that car. 2011-NMCA-001, ¶ 15, 149 N.M. 125, 245 P.3d 69. That scenario is distinct from this case, where unknown insurance status conveys no actionable information, yet serves as the sole basis for a stop. *See City of Roswell v. Hudson*, 2007-NMCA-034, ¶ 20, 141 N.M. 261, 154 P.3d 76 (holding that information that a license plate is not on file with the MVD fails to establish a reasonable suspicion to stop a motorist).

### 4.     MVD Statistics

**{10}**     We can see from the record that this case was preceded by many successful suppression motions by defendants in other cases regarding stops based on "unknown status" from which the State had concluded that it needed evidence from the MVD supporting the proposition that "unknown" equates with "uninsured." The MVD employee's testimony and the State's Exhibit 1 both support the district court's finding of a strong correlation between "unknown" and "uninsured." We have previously stated that " '[s]peculation' is the act of theorizing about a matter in which evidence is not sufficient for certain knowledge." *Bufalino v. Safeway Stores, Inc.*, 1982-NMCA-127, ¶ 25, 98 N.M. 560, 650 P.2d 844. Even a strong correlation between "unknown" status and being uninsured is insufficient by itself to support a traffic stop because evidence must be particularized to the person who is stopped for a violation, and those facts must be articulated, rather than based solely on probability. We note that MVD has not chosen, in light of its statement of the probable correlation, to

change "unknown" status to "uninsured" in the information it sends to officers' MDTs in the field. *E.g.*, *State v. Baldwin*, 712 P.2d 120, 123-24 (Or. App. 1985) ("[A] correlation between being [in a certain place], being armed[,] and possessing [drugs] . . . may be statistically or historically correct, but [a] defendant is an individual, not a statistic.") An officer must point to facts related to the individual, not to general statistics, to justify an intrusion of this nature. "[The officer] points to no 'specific and articulable facts' showing that he had reason to fear for his safety from [the] defendant."). The State was required to present information beyond general statistics. It was required to present specific and articulable facts about Defendant that influenced Officer Rempe's decision to pull Defendant over.

## B. "Known Unknowns"

### 1. Defendant's Insurance Status at the Time of the Stop

**{11}** Our law is quite clear that "[b]efore a police officer makes a traffic stop, he must have a reasonable suspicion of illegal activity." *Anaya*, 2008-NMCA-020, ¶ 6. We maintain that "information that is subsequently obtained cannot be relied upon to support the legality of a detention." *State v. Gutierrez*, 2008-NMCA-015, ¶ 24, 143 N.M. 522, 177 P.3d 1096 (citing *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856.) Officer Rempe's discovery of Defendant's insurance status after the stop cannot justify the stop. We note a contrast between the State's early statement in its brief that "Officer Rempe articulated facts[,] which, when viewed objectively, would lead a reasonable person to conclude that a violation of the Mandatory Financial Responsibility Act (MFRA) was occurring," and their argument that "Officer Rempe's belief that Defendant's vehicle was uninsured was objectively reasonable based on the evidence provided by the State's MVD witness." The first statement is demonstrably incorrect, and the second relies on information that neither appeared in any statement attributed to the officer nor appears to have existed at the time of the arrest. A chasm lies between the evidence presented of what the officer knew while sitting in his police car contemplating stopping Defendant, and what the district court came to know more than a year later.

**{12}** No evidence in the record indicates any reason for Officer Rempe to check Defendant's license plate in the first place, or whether the officer made any inferences from what he saw on his MDT that night. Again, we have previously held that information "that the license plate number on the car [is] not on file with the [MVD] fails to establish a reasonable suspicion" concerning a motorist. *Hudson*, 2007-NMCA-034, ¶ 20. Moreover, we note that the MVD evidence proffered by the State in court concerns a date range of October 5, 2011 to February 13, 2012, which, at its earliest, is two months after Defendant's conviction in magistrate court. The record does not demonstrate a connection between the MVD testimony and Defendant's actual insurance status at the time of the stop.

### 2. Officer Rempe's Knowledge of the Meaning of "Unknown"

6

**{13}** The State cannot establish beyond a supposition that Officer Rempe's actual knowledge of what "unknown" meant "may have been based [on] his personal experience of the correlation between 'unknown' status and inability to produce proof of insurance." The State's argument is not supported by evidence in the record. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("[A]rguments of counsel are not evidence."). Similarly, the State's argument, urging that "[t]he statistical probability . . . clearly warranted further investigation[,]" fails because no evidence indicates that the officer was aware of the statistics.

**{14}** The evidence fails to show that Officer Rempe knew of any statistical probabilities concerning "unknown" insurance status. Because the State, owing to the parties' stipulation, never presented evidence that the officer observed Defendant commit a traffic violation that caused him to stop her vehicle, or that he had any prior knowledge, training, or experience that "unknown" status generally correlated with a vehicle being uninsured, the State's arguments fail. Any assumption that the statistics were meaningful to the officer was based on speculation and does not support a determination that his stop was reasonable.

**{15}** We conclude that based on the lack of evidence in the record regarding Officer Rempe's basis for the stop, he had no articulable reason to believe Defendant had committed a crime. The officer's stop of Defendant was not constitutionally authorized. *See Dixson*, 633 S.E.2d at 638-39. To prove that Officer Rempe based his stop on a fact or rational inference, the State relied on the information on the officer's computer and only supported by the MVD statistics. However, any significance of the "unknown" status to him is not demonstrated by the record and irrelevant. General arguments regarding what law enforcement generally may rely on ignores the issue of the officer's understanding of the "unknown" status data at the time of the stop. Based on the record, it cannot be asserted that the officer associated any probability of an insurance violation with the word "unknown" on his MDT. The State has the burden to prove articulable, individualized, and particularized facts known to the officer. MVD's general statistics fail to carry this burden for the State. The district court substituted the MVD's statistics for evidence of Officer Rempe's suspicions, and its conclusion is thus unsupported by substantial evidence.

## C. "Unknown Unknowns"

**{16}** This case still leaves unanswered whether any police officer knows enough by virtue of "unknown" insurance status to effect a valid arrest. But even if an officer does know the MVD statistics indicating that 80% to 90% of all vehicles that register as "unknown" are uninsured, this still fails to provide objective individualized evidence regarding any individual vehicle and whether that particular vehicle is uninsured. The fact that MVD chooses "unknown" over "uninsured" in its printouts and data transmissions to officers demonstrates the limits of confidence required to effect a traffic stop. We decline in this case to accept the State's invitation to hold that general statistical probabilities objectively establish particularized suspicion. *See State v. Gage R.*, 2010-NMCA-104, ¶ 19, 149 N.M. 14, 243 P.3d 453 ("[W]e conclude that the search of a group of students gathering at the

'smoker's corner,' without reason to suspect that any particular student is in possession of contraband, is not constitutionally sound."). Absent evidence of any knowledge or reliance on Officer Rempe's part on any significance of unknown status of Defendant's insurance as reported to him on his MDT, the MVD evidence is irrelevant to whether the stop was constitutional.

## III. CONCLUSION

**{17}** Officer Rempe's lack of knowledge of any facts particular to Defendant's vehicle insurance decides this case. The evidence shows only that the officer knew that Defendant's insurance status was "unknown" and that he did not possess additional facts or reasonable inferences to objectively supply reasonable suspicion for her seizure. Because that "unknown" status was the sole basis of the stop, the stop was not constitutionally valid. Furthermore, even if evidence was presented that the officer was aware of the statistics establishing a correlation between "unknown" insurance status and lack of insurance, such knowledge of general probabilities without more fails to provide the requisite objective individualized evidence of lack of insurance that would support a traffic stop. We reverse the district court's denial of Defendant's motion to suppress evidence and remand this case for further proceedings in the district court consistent with this Opinion.

**{18}    IT IS SO ORDERED.**

 

 

_____
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

 

_____
**JAMES J. WECHSLER, Judge**

 

_____
**TIMOTHY L. GARCIA, Judge**

8