**IN THE COURT OF APPEALS OF IOWA**

No. 14-0773
Filed June 24, 2015

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**MAR'YO D. LINDSEY JR.,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar (motion to suppress) and David F. Staudt (trial and sentencing), Judges.

　　　　A defendant appeals his conviction and sentence for possession of a firearm as a felon, carrying weapons on school grounds, going armed with a dangerous weapon, and possession of a controlled substance. **AFFIRMED.**

　　　　Mark C. Smith, State Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Peter Blink, Assistant County Attorney, for appellee.

　　　　Heard by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, J.**

Mar'Yo Lindsey appeals his judgment and sentence for possession of a firearm as a felon, carrying weapons on school grounds, going armed with a dangerous weapon, and possession of a controlled substance. *See* Iowa Code §§ 724.26, .4B, .4(1), 124.401(5) (2013). He contends the district court should not have overruled his motion to suppress evidence obtained in the search of his school-issued athletic equipment bag.

## I.       *Background Facts and Proceedings*

Lindsey, a Dunkerton High School football player, sustained a serious injury during a football game. School superintendent Jim Stanton called an ambulance to take him to a hospital. On learning he would have to be hospitalized, Lindsey asked Stanton to have his friend take his equipment bag. According to Coach Jonathan Steffen, Lindsey was "pretty concerned about his bag and making sure . . . a certain kid would get the bag for him and . . . nobody would mess with it." Indeed, when Steffen called Lindsey to check on his condition, Lindsey again asked about the bag. Lindsey's concern raised a "red flag." Coach Steffen grabbed the bag and placed it on the school bus with his wife.

At the high school, Superintendent Stanton searched the bag and found a loaded firearm and "some drug paraphernalia." Stanton contacted police.

The State charged Lindsey with the crimes enumerated above. Lindsey moved to suppress the evidence, alleging "school officials seized and searched a backpack belonging to the defendant without a warrant and without [his] consent," in violation of the "individual protections to be free from unreasonable

searches and seizures as guaranteed by [the] Iowa Constitution and the Fourth, Fifth, and Sixth Amendments of the United States Constitution." Following a hearing, the district court overruled the motion.

Lindsey waived his right to a jury trial and was tried on the minutes of testimony. The district court found him guilty on all counts. Lindsey appealed following imposition of sentence.

## II.     Suppression Ruling

The Fourth Amendment to the United States Constitution "prohibits unreasonable searches and seizures by state officers." *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985) (quoting *Elkins v. United States*, 364 U.S. 206, 213 (1960)). In carrying out searches, "school officials act as representatives of the State." *Id.* at 336. Accordingly, searches by school officials must be reasonable. *See id.* at 341-42; *Vernonia Sch. Dist. 471 v. Acton*, 515 U.S. 646, 652 (1995) ("[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'").[1]

"The determination of the standard of reasonableness governing any specific class of searches requires 'balancing the need to search against the invasion which the search entails.'" *T.L.O.*, 469 U.S. at 337 (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 536-37 (1967)). With respect to an individualized search in the school context, the determination of reasonableness involves a two-part inquiry:

---

[1] At oral argument, Lindsey conceded his motion could be resolved by examining the Fourth Amendment exclusively. In light of his concession, we do not address the Iowa Constitution.

> [F]irst, one must consider "whether the . . . action was justified at its inception," second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place." Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there *are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.*

*Id.* at 341-42 (emphasis added) (citations and footnotes omitted).

Lindsey contends

> [t]he record is devoid of any basis on which school officials, at the time the decision to search was made, could have found reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.

He limits his argument to school officials' decision to confiscate the bag at the football field. He does not challenge the subsequent search of the bag at the school.

The State preliminarily counters with arguments as to why the Fourth Amendment is inapplicable at any stage. In its view, teachers act like parents—or *"in loco parentis"*—and, like parents, their authority is not constrained by the Fourth Amendment. Additionally, the State urges, Lindsey lacked any expectation of privacy in the bag. Neither argument persuades us.

First, the United States Supreme Court called the *in loco parentis* doctrine into question in the context of individualized student searches. *See id.* at 336. Specifically, the Court stated "it is difficult to understand why [school authorities] should be deemed to be exercising parental rather than public authority when conducting searches of their students." *Id.* at 336; *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009) ("Parents are known to

overreact to protect their children from danger, and a school official with responsibility for safety may tend to do the same. The difference is that the Fourth Amendment places limits on the official, even with the high degree of deference that courts must pay to the educator's professional judgment."); *Acton*, 515 U.S. at 655 (stating *T.L.O.* "rejected the notion that public schools, like private schools, exercise only parental power over their students"); *Webb v. McCullough*, 828 F.2d 1151, 1156-57 (6th Cir. 1987) (stating "the *in loco parentis* doctrine is no longer recognized as the source of school officials' general authority over pupils" and "[t]he *T.L.O.* opinion rejected the proposition *that in loco parentis* exempted school officials from the Fourth Amendment," and considering *in loco parentis* authority only as "one of the circumstances" in the reasonableness analysis).

Second, the Court underscored the privacy interests of students in their bags.[2] *T.L.O.*, 469 U.S. at 337-39 (stating "[a] search of a child's person or of a closed purse or other bag carried on her person, no less than a similar search carried out on an adult, is undoubtedly a severe violation of subjective expectations of privacy" and stating "[s]tudents at a minimum must bring to school not only the supplies needed for their studies, but also keys, money, and the necessaries of personal hygiene and grooming. *In addition, students may carry on their persons or in purses or wallets such nondisruptive yet highly personal items as photographs, letters, and diaries. Finally, students may have perfectly legitimate reasons to carry with them articles of property needed in*

---

[2] The Court expressed no opinion concerning a student's privacy interest in "lockers, desks, or other school property provided for the storage of school supplies." *T.L.O.*, 469 U.S. at 338 n.5. Since *T.L.O.*, the Court has not returned to this specific issue.

*connection with extracurricular or recreational activities*" (emphasis added)); *State v. Jones*, 666 N.W.2d 142, 148 (Iowa 2003) (in the context of nonindividualized searches of school lockers, stating "we believe [the student] maintained a legitimate expectation of privacy in the contents of his locker").

We recognize Lindsey may have had a lesser expectation of privacy in a school-issued athletic bag than he would have had in his wallet. *See Acton*, 515 U.S. at 657 ("[S]tudents who voluntarily participate in school athletics have reason to expect intrusions upon normal rights and privileges, including privacy."); *see also Bd. of Ed. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 831-32 (2002) ("[S]tudents who participate in competitive extracurricular activities voluntarily subject themselves to many of the same intrusions on their privacy as do athletes. . . . This regulation of extracurricular activities further diminishes the expectation of privacy among schoolchildren."). But a reduced expectation of privacy—unlike a non-existent expectation of privacy—still implicates the Fourth Amendment. *See Doe ex rel. Doe v. Little Rock Sch. Dist.*, 380 F.3d 349, 353 (8th Cir. 2004) ("Public school students' privacy interests, however, are not nonexistent. We think it is clear that schoolchildren are entitled to expect some degree of privacy in the personal items that they bring to school.").

For these reasons, we conclude the school officials' individualized search of Lindsey's bag, albeit a school-issued bag, implicated the Fourth Amendment. Accordingly, we proceed to *T.L.O.*'s "reasonable grounds" standard.

On our de novo review, we agree with the district court that this standard was met. First, as a student athlete using a school-issued equipment bag, Lindsey had a lowered expectation of privacy. *See Acton*, 515 U.S. at 657

("Legitimate privacy expectations are even less with regard to student athletes."). Second, the superintendent and coach knew Lindsey was previously suspended for possession of drug paraphernalia and previously was the subject of weapons charges. While Superintendent Stanton testified he did not think about this history at the time he decided to seize the bag, constitutional reasonableness does not depend on the actual motivations of the officials involved. *See Whren v. United States*, 517 U.S. 806, 813 (1996). Third, Lindsey's preoccupation with his bag in the face of his hospitalization for a serious injury would have led a reasonable person to suspect the bag contained something illicit. *See generally Coffman v. State*, 782 S.W.2d 249, 250 (Tex. Ct. App. 1989) (upholding search of student's bag where student "jumped back and clutched his book bag" and later "lunged at" the assistant principal and tried to take the bag from him); *In re L.L.*, 280 N.W.2d 343, 352 (Wis. Ct. App. 1979) (holding suspicious behavior, together with teacher's prior experience of finding weapons on the student's person, provided reasonable suspicion to support search of student); *but see State v. Pablo R.*, 137 P.3d 1198, 1200-01, 1202-04 (N.M. Ct. App. 2006) (holding search and seizure of student found out of class not reasonable at inception, despite testimony student seemed "nervous and fidgety").

Based on this record, we conclude the district court appropriately denied Lindsey's motion to suppress. We affirm Lindsey's judgment and sentences.

**AFFIRMED.**